# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 01-1917

DONALD L. DINGESS, APPELLANT,

AND

No. 02-1506

MARCELLUS S. HARTMAN, APPELLANT,

V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Remand from the U.S. Court of Appeals for the Federal Circuit

(Argued December 2, 2004                    Decided    March 3, 2006   )

*Kenneth M. Carpenter*, of Topeka, Kansas, with whom *Richard LaPointe*, of Marco Island, Florida, was on the brief, for appellant Donald L. Dingess.

*Susan Paczak*, of Pittsburgh, Pennsylvania, for appellant Marcellus S. Hartman.

*Robert W. Legg*, with whom *Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Joan E. Moriarty*, Deputy Assistant General Counsel; and *David L. Quinn*, all of Washington, D.C., were on the brief in No. 01-1917, for the appellee. *Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Richard Mayerick*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief in No. 02-1506, for the appellee.

*Richard Robert James*, of Glen Allen, Virginia, was on the brief for the National Organization of Veterans' Advocates as amicus curiae.

Before GREENE, *Chief Judge*, and KASOLD and HAGEL, *Judges*.[*]

---

[*] On December 2, 2004, the en banc Court consisting of Chief Judge Ivers, Judge Steinberg, Judge Greene, Judge Kasold, and Judge Hagel heard oral arguments in this consolidated appeal. On August 4, 2005, the full-court panel was dissolved, because of the retirements of Chief Judge Ivers and Judge Steinberg, and the matter was referred for disposition to a panel composed of Chief Judge Greene, and Judges Kasold and Hagel.

GREENE, *Chief Judge*: These cases present different but related questions of whether the notice provisions of 38 U.S.C. § 5103(a), as amended by the Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, § 3(a), 114 Stat. 2096, 2096-97, apply to the assignment of an initial disability rating (*Dingess* appeal) and effective date (*Hartman* appeal) associated with an award of VA service-connection disability compensation.

Appellant Donald L. Dingess appeals, through counsel, an October 24, 2001, decision of the Board of Veterans' Appeals (Board) that denied (1) an initial VA disability rating higher than 30% for an award of service connection for his post-traumatic stress disorder (PTSD) and (2) a rating of total disability based on individual unemployability (TDIU) resulting from his service-connected disability. *Dingess* Record (*Din.* R.) at 1-14. Appellant Marcellus S. Hartman appeals, through counsel, a February 14, 2002, Board decision that denied an effective date earlier than April 15, 1999, for an award of service connection for PTSD. *Hartman* Record (*Har.* R.) at 2. The U.S. Court of Appeals for the Federal Circuit (Federal Circuit) remanded these cases for the Court to take account of the rule of prejudicial error pursuant to *Conway v. Principi*, 353 F.3d 1369 (Fed. Cir. 2004). The Court ordered additional briefing and oral argument on whether section 5103(a) applies to these cases. The Court expresses its appreciation to all parties and to amicus curiae National Organization of Veterans' Advocates (NOVA) for its assistance in these appeals.

After considering the briefs and oral argument of the parties and amicus, we hold that (1) section 5103(a) requires notice to a claimant of how a VA service-connection claim may be substantiated as to all five elements of that claim and (2) certain standards apply for the timing and content of that notice. These holdings and the application of the rule of prejudicial error under 38 U.S.C. § 7261(b)(2), lead to the following conclusions: (1) In *Dingess*, the Board erred in not providing adequate notice on how to substantiate a TDIU claim, and, applying the rule of prejudicial error, the Court will vacate, in part, and affirm, in part, the October 2001 Board decision; and (2) in *Hartman*, the Board did not commit prejudicial error, and, as such, the Court will withdraw the July 22, 2004, single-judge order and will affirm the February 2002 Board decision.

# I. BACKGROUND

## A. *Dingess* Appeal

In June 1999, Vietnam veteran Donald L. Dingess filed with VA an application for compensation or pension in which he listed "[PTSD and] other nervous conditions" as the condition for which the claim was being made. *Din.* R. at 62. He made no statement regarding the extent of his disability or the disability rating to which he believed he was entitled in the event that he obtained an award of service connection. In May 2000, a VA regional office (RO) awarded Mr. Dingess, under 38 U.S.C. § 1110, service connection for PTSD and assigned (1) a temporary total disability rating for the duration of his in-patient treatment program and (2) a 10% rating thereafter, effective from June 22, 1999. *Id.* at 220-26. The following month, he filed a Notice of Disagreement (NOD) seeking a rating higher than 10%. *Id*. at 231.

During a VA medical examination in November 2000, Mr. Dingess reported that he was experiencing the following symptoms: Nightmares, disruptive sleep, bursts of rage and irritability, extreme depression, little or no concentration, and crowd avoidance. *Id*. at 372. According to the examination report, Mr. Dingess stated that his symptoms "caused him to end his small business of selling used appliances and furniture out of his house." *Id*. He also reported his belief that his Vietnam experiences led to "his inability to obtain and maintain substantially gainful employment." *Id*. The medical examiner diagnosed Mr. Dingess as having "[PTSD], chronic, moderate" and stated: "The major stressors in the veteran's life at present are his criminal probation, his financial inadequacy, his relative homelessness[,] and psychiatric symptoms which are interfering with his ability to function." *Id.* at 374. The examiner assessed Mr. Dingess' Global Assessment of Functioning (GAF) score at 60 for PTSD alone. *Id*; *see also* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994) [hereinafter DSM-IV] (GAF is scale reflecting "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." A GAF score of 60 reflects "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning"). The examiner further stated: "The veteran's symptoms of PTSD are considered to be moderate in severity. He is competent and employable." *Din*. R. at 374.

3

In January 2001, a decision review officer (DRO) increased Mr. Dingess' PTSD rating to 30%, effective from June 22, 1999; increased that rating to 100% based on his 12-week hospitalization, effective from November 22, 1999, until February 29, 2000; but continued the rating at 30%, effective from March 1, 2000. *Id*. at 390-93. The DRO indicated that, given Mr. Dingess' "level of disability and other factors, such as [his] age, education[,] and occupational background," an "extraschedular permanent and total disability rating" was authorized "subject to approval by the [a]djudication officer." *Id.* at 391. That same month, the RO issued a Statement of the Case (SOC). *Id.* at 376-88. Mr. Dingess, through counsel, appealed the DRO decision to the Board; in that appeal, he sought an increased PTSD rating and presented an additional claim for a TDIU rating. *Id*. at 400-01, 403-08.

In May 2001, the RO notified Mr. Dingess to submit any evidence showing that his service-connected PTSD had increased in severity. *Id*. at 419-20. One week later, Mr. Dingess informed the RO that he had no medical evidence to submit. *Id*. at 427. In June 2001, the RO denied a TDIU rating. *Id*. at 430-32. The RO found that the evidence did not show that he met the established schedular rating requirements for a TDIU rating. *Id*. The RO stated that the claim would not be "submitted for extra[]schedular consideration because there [were] no exceptional factors or circumstances associated with the veteran's disabilities rendering him unable to secure or follow a substantially gainful occupation." *Id*. at 431. Mr. Dingess again appealed to the Board. *Id.* at 443-52, 456.

In the October 2001 decision here on appeal, the Board also denied a rating higher than 30% for Mr. Dingess' service-connected PTSD. *Id*. at 4-9. Concerning the Secretary's statutory and regulatory notice obligations, the Board, after noting that the VCAA was enacted during the pendency of the appeal, concluded that "the notice and duty to assist provisions have been satisfied." *Id*. at 4. The Board determined that, in May 2001, Mr. Dingess was advised of the evidence necessary to substantiate his claim for a higher rating and was offered an opportunity to respond, and that in an August 2001 SOC he "was advised . . . of the applicable law and regulations governing a [TDIU-rating] claim." *Id*. The Board denied his claim for a TDIU rating after determining that, under 38 C.F.R. § 4.16(a)-(b) (2001), "there was no evidence to show that the veteran's PTSD symptoms . . . prevent him from obtaining substantially gainful employment." *Id*. at 10-11.

On November 8, 2002, the Court held that the Board erred when it failed to discuss adequately how VA had complied with the notice requirements in 38 U.S.C. § 5103(a). Therefore, the October 2001 Board decision was vacated and the matter remanded for compliance with the VCAA. *Dingess v. Principi*, No. 01-1917, 2002 WL 31513337 (Vet. App. Nov. 8, 2002). The Secretary appealed to the Federal Circuit, which, on January 7, 2004, vacated this Court's decision and returned the matter "for further proceedings consistent with [the Federal Circuit's] holding in *Conway*[, *supra*]." *Dingess v. Principi*, 85 Fed. Appx. 216 (Fed. Cir. 2004) (per curiam order). In *Conway*, *supra*, the Federal Circuit held that, when determining that the Board had failed to ensure compliance with section 5103(a) notice requirements and when considering whether the Secretary's failure to comply with section 5103(a) requires a remand to the Board, this Court must "take due account of the rule of prejudicial error" as provided in 38 U.S.C. § 7261(b)(2). Subsequently, the parties here filed supplemental briefs addressing the proper disposition of this appeal in light of the Federal Circuit's order.

### B. *Hartman* Appeal

Vietnam veteran Marcellus S. Hartman was awarded education benefits under chapter 34 of title 38, U.S. Code. *Har*. R. at 17. In September 1986, he sent to the RO two letters disagreeing with a June 1986 Board decision that had denied an extension of the delimiting date for his use of the chapter 34 educational-assistance allowance. *Id*. at 86-87, 89. He argued that his PTSD prevented him from using all of his education benefits before the delimiting date of May 6, 1982. *Id*. The RO considered his letters as an informal claim for service connection for PTSD and notified him in October 1986 that certain evidence was needed to process his claim. Specifically, the RO requested (1) a detailed description of the traumatic incidents that happened in service that produced the stress that caused his PTSD, and (2) medical reports from doctors who had treated him for PTSD since his May 1972 discharge. *Id*. at 91.

In a November 6, 1986, letter to the RO, Mr. Hartman acknowledged receiving the RO's notice "reminding [him] of an appointment with VA in Temple[, Texas,] on November 24"; he advised that he had never asked for any appointments, that no one had asked him if he wanted one, and that he had "no plans to be in Temple on November 24th." *Id.* at 94. The RO subsequently

advised him by letter that a claim may be disallowed for failure to prosecute where requested evidence is not furnished or where a veteran does not report for a scheduled examination; and that he should make every effort to keep his scheduled appointment or contact the VA medical center (VAMC) to reschedule the appointment. *Id*. at 97. On December 18, 1986, the RO notified Mr. Hartman that, because he had failed to report for his scheduled PTSD examination, further action would not be taken on his PTSD claim. *Id*. at 104. Attached to that letter was a notice of his procedural and appellate rights. *Id*. The record on appeal does not indicate that Mr. Hartman appealed that decision. *See id*. at 1-206.

In April 1999, Mr. Hartman again claimed service connection for PTSD and asked VA to obtain certain VA medical records. *Id*. at 107. Specifically, in his statement in support of his claim, he stated as follows: "I'm filing [for] service connection for PTSD. I have a stressor that I was awarded the Purple Heart." *Id.* He made no statement regarding an effective date. A July 1999 RO decision awarded him service connection for his PTSD, and assigned a 70% disability rating, effective April 15, 1999. *Id.* at 144-48. In February 2000, the RO awarded a TDIU rating, effective from April 15, 1999, and denied an effective date earlier than April 15, 1999, for the award of service connection for his PTSD. *Id*. at 177-79. In February 2001, he disagreed with the effective date for his award of service connection for PTSD. *Id*. at 181-82. He maintained that the effective date should be the date of his discharge from the Army. *Id.* An SOC was issued in May 2001. *Id*. at 184-94. In his Substantive Appeal to the Board, Mr. Hartman, through counsel, argued that he had filed in 1985 an implied claim for service connection and, relying on *Hayre v. West*, 188 F.3d 1327 (Fed. Cir. 1999) (holding that a grave procedural error could prevent a decision from becoming final), asserted that the RO had committed grave procedural error by failing to obtain all necessary records from various VA facilities. *Har*. R. at 197.

In its decision denying Mr. Hartman an effective date earlier than April 15, 1999, the Board addressed VA's notice obligations under the VCAA of section 5103(a) and stated:

> The Board notes that it does not appear that the RO explicitly addressed the provisions of the VCAA when it adjudicated the case below. Nevertheless, the Board finds that VA's duties have been fulfilled in the instant case. Here, the RO advised the veteran of the evidence necessary to substantiate his claim by the May

6

2001 [SOC], including the applicable criteria concerning the assignment of effective dates for grants of service connection. Further, the veteran has not identified any pertinent evidence that is not of record. . . . Thus, the Board finds that the duty to assist and duty to notify provisions of the VCAA have been fulfilled, including the revised regulatory provisions of 38 C.F.R. § 3.159[ (2001)], and that no additional assistance to the veteran is required based on the facts of the instant case.

*Id*. at 4. As to the effective date assigned, the Board concluded that, although Mr. Hartman had filed a claim for service connection for PTSD in 1986, he had abandoned his claim when he had failed to report for the VA medical examination scheduled for November 1986 and had not sought to reschedule it. *Id.* at 10-11 (citing 38 C.F.R. § 3.158(a) (2001)). The Board found that, other than the abandoned claim, "no formal or informal claim of service connection for PTSD was received prior to [Mr. Hartman]'s statement of April 15, 1999." *Id*. The Board concluded that although no additional VA medical records had been requested following his November 1986 statement, he nevertheless had abandoned his claim at that time. *Id.* at 13. Thus, the *Hayre* opinion did not provide a basis upon which to award an earlier effective date (EED). *Id*. (citing *Wood v. Derwinski*, 1 Vet.App. 190, 193 (1991) (noting that duty to assist is not a one-way street)). Mr. Hartman appealed.

On August 18, 2003, the Court held that the Board had committed section 5103(a) and § 3.159(b) notice error and remanded the matter to the Board pursuant to *Quartuccio v. Principi*, 16 Vet.App. 183 (2002). *Hartman v. Principi*, No. 02-1506, 2003 WL 21981584 (Vet. App. Aug. 18, 2003). The Secretary appealed to the Federal Circuit, which remanded the matter pursuant to *Conway*, *supra*. *Hartman v. Principi*, 98 Fed. Appx. 885 (Fed. Cir. 2004). This Court, on July 22, 2004, found notice error, again ordered the February 2002 Board decision vacated, and remanded the matter. The Court held that VA had failed to comply with its amended duty to notify Mr. Hartman either of the information and evidence necessary to substantiate his EED claim or of which party is responsible for attempting to obtain any such information or evidence under section 5103(a). *Hartman v. Principi*, No. 02-1506, 2004 WL 1657540 (July 22, 2004). On August 12, 2004, the Secretary filed a motion for reconsideration or a panel decision. On October 19, 2004, the motion for a panel decision was granted, and the panel directed the parties to file supplemental briefs

and invited any interested amicus curiae to file a brief. *Hartman v. Principi*, 18 Vet.App. 432, 433 (2004) (per curiam order).

## II.  CONTENTIONS ON APPEAL

Both appellants argue that their Board decisions should be vacated and their claims remanded for proper notice under section 5103(a).  They argue that (1) the section 5103(a) notice provisions apply to all claims for benefits sought by claimants and to each element of those claims, including the elements of effective date and disability rating; (2) each claim must be construed as a claim for the maximum benefits available under the law for each element of the claim; (3) VA has failed to comply with these notice provisions; and (4) the Secretary has the burden of demonstrating that VA's error was not prejudicial.  Appellant (App.) *Din.* Supplemental (Suppl.) Brief (Br.) at 5-11, 16-25; App. *Har*. Br. at 7-8; App. *Har*. Suppl. Br. at 5-16.  Mr. Dingess also argues that (1) the Secretary "failed to fulfill his statutory duty to assist under 38 U.S.C. § 5107(a) (now § 5103A)" [by] not provid[ing] him with an adequate medical examination and that both the November 1999 and November 2000 medical-examination reports lack any information required under 38 C.F.R. § 4.1 (2005) about the limitations of activity imposed by his PTSD; (2) the Board "failed to provide adequate reasons [or] bases for [its] decision as required by 38 U.S.C. § 7104(d)(1)" because it did not address whether his PTSD claim warranted extraschedular consideration under 38 C.F.R. § 3.321(b)(1) (2001); and (3) the Board did not "provide any adequate discussion of the veteran's educational and occupational history in the context of a determination of eligibility based on TDIU under 38 C.F.R. § 4.16(b)."  App. *Din*. Br. at 2-5.

The Secretary argues that, in both cases, there is evidence to "substantiate the claim" when VA has in its possession sufficient information and evidence to award a claimant service connection and to assign a disability rating and effective date for that service-connected disability.  Therefore, he contends that once a claim is substantiated, as in these cases, section 5103(a) notice is no longer required.  Secretary (Sec'y) *Din*. Suppl. Br. at 5-6.  The Secretary further contends, assuming that he was required to and did not provide section 5103(a) notice for a potential higher rating of an original disability rating or an EED, that the appellants here have failed to meet their burden of demonstrating

8

prejudice arising from any such notice error. Sec'y *Har.* Suppl. Br. at 10-18; Sec'y *Din*. Suppl. Br. at 14-18.

The Secretary also argues that Mr. Dingess did not allege in his initial appeal to the Court error regarding the Secretary's section 5103(a) notice obligations, that the Court raised the notice issue sua sponte in its November 2002 decision, and that the Court should not now find such error to exist. Sec'y *Din.* Suppl. Br. at 13-14, 18. Regarding the other grounds for a remand asserted by Mr. Dingess, the Secretary asserts that the medical evidence of record provides ample support for the Board's factual finding that Mr. Dingess did not meet the necessary criteria for a rating higher than 30% for PTSD or for a TDIU rating. *Id*. at 11. The Secretary also argues that the duty to assist was met because both medical-examination reports provided information about the limitations of activity imposed by Mr. Dingess' PTSD. *Id*. at 16-17. As to the TDIU-rating claim, the Secretary maintains that Mr. Dingess does not meet the 60% single-disability rating requirement of 38 C.F.R. § 4.16(a) and is therefore not eligible for a TDIU rating under that provision. *Id*. at 17-18. The Secretary also asserts that the record does not support a finding of unemployability and that Mr. Dingess is thus not eligible for consideration under § 4.16(b). *Id*. at 18-19. Finally, the Secretary argues that there is no evidence of record that would warrant extraschedular consideration under § 3.321(b)(1). *Id*. at 19-20.

## III. ANALYSIS

Although Mr. Dingess did not raise in his principal brief any argument concerning the Secretary's compliance with the VCAA notice requirements, thereby potentially abandoning that issue, *see Ford v. Gober*, 10 Vet.App. 531, 535-36 (1997); *Degmetich v. Brown*, 8 Vet.App. 208, 209 (1995), *aff'd*, 104 F.3d 1328 (Fed. Cir. 1997), it was that issue that formed the basis of this Court's remand decision that the Federal Circuit vacated. Additionally, Mr. Dingess has properly raised this issue in the context of this current appellate proceeding. Therefore, the issue will be addressed. *See Mayfield v. Nicholson*, 19 Vet.App. 103, 109 (2005), *argued*, No. 05-7157 (Fed. Cir. Feb. 6, 2006).

A. Applicable Law and Regulation Regarding VCAA Notice and Assistance

Section 3 of the VCAA amended, inter alia, 38 U.S.C. § 5103 ("Notice to claimants of required information and evidence"). VCAA § 3(a), 114 Stat. at 2096-97. As amended, section 5103(a) provides:

> (a) REQUIRED INFORMATION AND EVIDENCE.–Upon receipt of a complete or substantially complete application, the Secretary shall notify the claimant and the claimant's representative, if any, of any information, and any medical or lay evidence, not previously provided to the Secretary that is necessary to substantiate the claim. As part of that notice, the Secretary shall indicate which portion of that information and evidence, if any, is to be provided by the claimant and which portion, if any, the Secretary, in accordance with section 5103A of this title and any other applicable provisions of law, will attempt to obtain on behalf of the claimant.

38 U.S.C. § 5103(a). On August 29, 2001, the Secretary issued 38 C.F.R. § 3.159(b) to implement this notice requirement, which applies to any claim for benefits, pending before the Department and "not decided by VA" as of November 9, 2000, the date of the VCAA's enactment. 66 Fed. Reg. 45,620, 45,629-32 (Aug. 29, 2001); *see also Pelegrini v. Principi*, 18 Vet.App. 112 (2004). Specifically § 3.159(b)(1) provides, and provided at the time of the Board decisions here on appeal, in pertinent part:

> (b) *VA's duty to notify claimants of necessary information or evidence.* (1) When VA receives a complete or substantially complete application for benefits, it will notify the claimant of any information and medical or lay evidence that is necessary to substantiate the claim. VA will inform the claimant which information and evidence, if any, that the claimant is to provide to VA and which information and evidence, if any, that VA will attempt to obtain on behalf of the claimant. VA will also request that the claimant provide any evidence in the claimant's possession that pertains to the claim.

> (2) If VA receives an incomplete application for benefits, it will notify the claimant of the information necessary to complete the application and will defer assistance until the claimant submits this information.

38 C.F.R. § 3.159(b) (2005). The regulatory requirement that VA "'will also request that the claimant provide any evidence in the claimant's possession that pertains to the claim', 38 C.F.R. § 3.159(b)(1), has been termed 'a fourth element of the requisite notice.'" *Mayfield*, 19 Vet.App. at 110 (quoting *Pelegrini*, 18 Vet.App. at 121). In *Quartuccio,* this Court remanded to the Board for

further adjudication a denied claim to reopen after holding that no documents in the record demonstrated that the notice requirements of section 5103(a) and § 3.159(b)(1) had been met. We observed that the documents of record failed to "'notify the claimant . . . of any information, and any medical or lay evidence, not previously provided to the Secretary that is necessary to substantiate the claim'" and failed to "'indicate which portion of that information and evidence, if any, is to be provided by the claimant and which portion, if any, the Secretary . . . will attempt to obtain on behalf of the claimant.'" *Quartuccio*, 16 Vet.App. at 187 (quoting 38 U.S.C. § 5103(a)).

Generally, "an appellant claiming noncomplying notice bears the burden of convincing the Court that a notice error has been committed, by referring to specific deficiencies in the document(s) in the record on appeal (ROA), including any documents that the Secretary and/or the Board may have relied on as having met the section 5103(a)/§ 3.159(b)(1) requirements." *Mayfield*, 19 Vet.App. at 111. In all cases addressing error in these notice requirements, we are required to "take due account of the rule of prejudicial error" under 38 U.S.C. § 7261(b)(2). *See Conway*, 353 F.3d at 1375; *Mayfield*, 19 Vet.App. at 112-21. "[A]n error is not prejudicial when the error did not affect 'the essential fairness of the [adjudication].'" *Mayfield*,19 Vet.App. at 116 (quoting *McDonough Power Equip. v. Greenwood*, 464 U.S. 548, 553 (1984)).

The VCAA also requires the Secretary to assist claimants. 38 U.S.C. § 5103A. Section 5103A(a)(1) states that "the Secretary shall make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate the claimant's claim for a benefit under a law administered by the Secretary." That assistance includes, but is not limited to, obtaining service medical records and additional medical treatment records, providing a medical examination where necessary, and prescribing regulations to carry out the duty to assist. 38 U.S.C. § 5103A. However, "[n]othing in [section 5103A] shall be construed as precluding the Secretary from providing such other assistance . . . to a claimant in substantiating a claim as the Secretary considers appropriate." 38 U.S.C. § 5103A(g).

B. Application of Notice Requirements to Elements of a Service-Connection Claim

Section 5103(a) and § 3.159(b) require VA to notify a service-connection claimant of the evidence needed to substantiate the claim. Although the term "claim" is not defined in title 38, U.S. Code, the caselaw of the Federal Circuit and this Court has established that a service-connection claim that provides for disability-compensation benefits under 38 U.S.C. §§ 1110 (war time) or 1131 (peacetime) consists of the following five elements: "(1) [V]eteran status; (2) existence of a disability; (3) a connection between the veteran's service and the disability; (4) *degree of disability*; and (5) *effective date of the disability*." *Collaro v. West*, 136 F.3d 1304, 1308 (Fed. Cir. 1998) (emphases added); *Fenderson v. West*, 12 Vet.App. 119, 125 (1999). The appellants and amicus NOVA argue that the term "claim" in section 5103(a) means a claim for VA benefits and that the section 5103(a) notice requirements do not apply solely to the element of service connection–one element of the claim–but apply to all the elements that constitute the claim because the claimant must "substantiate" all those elements to succeed; and, therefore, the claim is not "substantiated" until all of the elements have been "substantiated." App. *Har*. Suppl. Br. at 5-7 (citing *Conway*, *supra*, *Barrera v. Gober*, 122 F.3d 1030 (Fed. Cir. 1997), and *Vargas-Gonzales v. Principi*, 15 Vet.App. 222, 227 (2001)); App. *Din.* Suppl. Br. at 5-11; Amicus Br. at 19, 26, 28.

The Secretary does not dispute that a service-connection "claim" consists of the five elements. His dispute relates to when a claim is sufficiently "substantiated" so as to end his obligation to provide section 5103(a) notice. There is no dispute that elements 1, 2, and 3 are necessary to substantiate service connection, and thus, notice clearly must be provided on how those elements may be established. *See Mayfield, Pellegrini,* and *Quartuccio*, all *supra*. The question is whether section 5103(a) and § 3.159(b) notice is required for elements 4 (degree of disability) and 5 (effective date of the disability).

Resolving the question of whether the section 5103(a) and § 3.159 notice requirements apply to elements 4 and 5 of a service-connection-claim requires an interpretation of the pertinent statutory and regulatory language. Both section 5103(a) and § 3.159 provide that, once a complete or substantially complete application has been received, VA must notify the claimant of any

information and medical or lay evidence that is necessary to "*substantiate* the *claim*." 38 U.S.C. § 5103(a) (emphasis added); 38 C.F.R. § 3.159.

Relying on *Paralyzed Veterans of America v. Secretary of Veterans Affairs*, 345 F.3d 1334, 1345-46 (Fed. Cir. 2003) [hereinafter *PVA v. Sec'y*], the Secretary asserts that the section 5103(a) notice requirement "is not triggered if the Secretary is already in possession of information and evidence to substantiate the claim." Sec'y *Din*. Suppl. Br. at 5. Essentially, he argues that a claim is substantiated when service connection has been established and there is in the claims file sufficient evidence to assign the claimant *a* disability rating and *an* effective date. The Secretary maintains that section 5103(a) notice to the claimant is not required to determine a higher initial disability rating or potentially EED. Sec'y *Har*. Suppl. Br. at 1-10; Sec'y *Din*. Suppl. Br. at 4-12. He argues that section 5103(a) applies at the beginning of the claims process and that when an appeal is initiated by the filing of an that challenges the adjudication of an element decided in association with an award of service connection, the specific notice provisions imposed by VA appellate procedures under 38 U.S.C. § 7105(d)(1), apply and "supercede" the general notice provisions of 38 U.S.C. § 5103(a). *Id*. He also contends that an NOD does not constitute an "application" for benefits within the meaning of section 5103(a) and 38 C.F.R. § 3.1(p) (2005), and that section 5103(a) notice does not apply to appellate procedures. Sec'y *Har.* Suppl. Br. at 8; Sec'y *Din.* Suppl. Br. at 6. The Secretary argues further that the SOC is the means by which a claimant is notified of the need to submit evidence to rebut adverse RO findings on effective dates and disability ratings. Sec'y *Har.* Suppl. Br. at 4-5; Sec'y *Din*. Suppl. Br. at 9.

Responding to the Secretary's position, Mr. Hartman and amicus NOVA argue that the filing of an NOD does not trigger an end to the original claims process and does not immediately place the claim in "appellate" status in a way that would end VA's duties to notify and assist the claimant. They point out that after an NOD is filed, (1) VA may undertake, pursuant to section 7105(d)(1), additional development of the claim, and (2) the claimant has the option, pursuant to 38 C.F.R. § 3.2600 (2005), to have his claim reviewed de novo by a DRO. App. *Har.* Suppl. Br. at 8-9; Amicus Br. at 22. They argue that filing an NOD does not end the development and adjudication

13

of the claim but that the process of claim adjudication overlaps the NOD and appellate processes. *Id*.

Because a service-connection claim is comprised of five elements, *see ante* at 11, the Court holds that the notice requirements of section 5103(a) apply generally to all five elements of that claim. Therefore, upon receipt of an application for a service-connection claim, section 5103(a) and § 3.159(b) require VA to review the information and the evidence presented with the claim and to provide the claimant with notice of what information and evidence not previously provided, if any, will assist in substantiating or is necessary to substantiate the elements of the claim as reasonably contemplated by the application. This includes notice that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. Section 5103(a) and § 3.159(b) notice must focus on statements, opinions, or documents, i.e., "any information, and any medical or lay evidence, not previously provided to the Secretary," that can be offered by the claimant or obtained by VA on the claimant's behalf in order to be used by VA in deciding each element of the claim. 38 U.S.C. § 5103(a); 38 C.F.R. § 3.159(b).

Section 5103(a) notice, however, is not the only way for a claimant to receive information on obtaining VA benefits. Under section 5103A, VA is required to provide assistance to a claimant throughout the adjudication process. This assistance coupled with VA's cooperative, pro-claimant philosophy allows for the full and fair development of every reasonably raised claim by the veteran, and includes advising claimants of pertinent statutes, regulations, and diagnostic codes, when evidence suggests that they are applicable. *See Douglas v. Derwinski*, 2 Vet.App. 435, 442 (1992) ("[B]ecause the Board was confronted with evidence in this case that raised the issue of entitlement to direct service connection . . . , the Board was required . . . to inform the veteran that the legal issue of direct service connection was presented and that its development could entitle him to disability compensation.").

### 1. Content of Notice on Disability Rating and Effective Date Elements

Section 3.103(a), title 38, Code of Federal Regulations, requires that, after developing a claim, VA "render a decision which grants every benefit *that can be supported in law* while protecting the interests of the Government." 38 C.F.R. § 3.103(a) (2005) (emphasis added). In *AB v.*

14

*Brown*, this Court concluded that where the RO was adjudicating *only* the question of disability rating *after* the Board had awarded service connection "[a] claimant will generally be presumed to be seeking the maximum benefit allowed by law and regulation, and it follows that such a claim remains in controversy where less than the maximum available benefit is awarded." *AB*, 6 Vet.App. 35, 38-39 (1993). In *Shoemaker v. Derwinski*, the Court held that "the Board had an obligation . . . *where the veteran specifically had requested an increase in his then 30% rating*, to explain why the veteran's symptoms comported with the criteria of the 50% disability rating but not with the criteria of the 70% or 100% disability ratings." *Shoemaker*, 3 Vet.App. 248, 253 (1992) (emphasis added). Additionally, the Federal Circuit has observed in *PVA v. Sec'y*, that "the statutory provision § 5103(a), and therefore regulatory provision § 3.159, apply *only* when a *claim cannot be granted in the absence of additional necessary information described in the notice*." *PVA v. Sec'y*, 345 F.3d at 1345-46 (citation omitted) (emphasis added).

Neither section 5103(a) nor § 3.159(b) prescribes with any specificity the type of notice that is required, especially for disability rating and effective date. Without specific plain language, we must look to the legislative intent of Congress for clarification. The legislative history of section 5103(a) expresses no intent to require that section 5103(a) notice specify all potential disability ratings that can be awarded, effective dates that may be assigned, or other claims that may be filed where those issues are not reasonably raised in the application. On September 25, 2000, Senator Rockefeller, then the ranking member of the Senate Committee on Veterans' Affairs, stated:

> I felt that it was critical to include requirements that VA explain to claimants what information and evidence will be needed to prove their claim. VA will also be required to explain what information and evidence it would secure (e.g., medical records, service medical records, etc.) and what information the claimant should submit (e.g., marriage certificate, Social Security number, etc.). Currently, many veterans are asked for information in a piecemeal fashion and don't know what VA is doing to secure other evidence. Better communication will lead to expedited decisionmaking and higher satisfaction in the process.

146 CONG. REC. S9212 (Sept. 25, 2000). The information and evidence contemplated by Senator Rockefeller is consistent with the statutory requirement that VA notify a claimant "of any information, and any medical or lay evidence, not previously provided to the Secretary that is

15

necessary to substantiate the claim." 38 U.S.C. § 5103(a).  Requiring VA to provide notice on all potential disability ratings that can be awarded, effective dates that may be assigned, or other claims that may be filed, where dispute on those issues is not reasonably raised in the veteran's application, is inconsistent with the plain language and history of the statute.  Furthermore, such specificity would burden VA's claims system by causing onerous delays in the processing and awarding of benefits, contradicting the "expedited decisionmaking" and "higher satisfaction in the process" envisioned by Senator Rockefeller.

The regulatory history is also informative.  When § 3.159 was promulgated in August 2001, VA considered whether specific notice on all elements of a claim was necessary under section 5103(a) and stated:

> We received a comment stating that the regulation should require VA, at the point in time when any evidence has been received in a claim for compensation benefits, to determine whether that evidence satisfies a necessary element of the claim and so advise the claimant.  We decline to revise the regulation to accommodate this suggestion; such a regulatory requirement would necessitate multiple reviews of a single claim and is administratively unworkable.  It would, moreover, increase the time it takes to decide a single claim, contributing to the backlog of claims that await processing.  The intent of Congress, as indicated in the plain language of the VCAA and in the legislative history, is that VA advise a claimant as to the evidence and information necessary to substantiate a claim once VA receives a substantially complete application.  There is no indication that Congress intended that VA review each claim and advise the claimant every time any evidence relevant to it is received.  When a decision is reached on a claim, the rating decision document will cite all relevant evidence obtained and considered, as well as any relevant evidence not obtained or considered.  That rating decision document is shared with the claimant as part of our notification procedures.

66 Fed. Reg. 45,620, 45,622.  "[S]ubstantial deference is given to the statutory interpretation of the agency authorized to administer the statute." *Livesay v. Principi*, 15 Vet.App. 165, 172 (2001) (en banc) (quoting *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837, 844 (1984)); *see also Tallman v. Brown*, 7 Vet. App. 453, 463-65 (1995).  Therefore, we will defer to "VA's reasonable interpretation of a statutory provision when the law does not directly address the precise question at issue." *Gallegos v. Principi*, 283 F.3d 1309, 1312 (Fed. Cir. 2002).  Here, we consider VA's interpretation, as expressed in the explanatory statement of § 3.159, reasonable.

16

Nevertheless, as mentioned earlier, the notice requirements of section 5103(a) apply generally to all five elements of a service-connection claim and, as a consequence, we do not hold that VA does not have to provide *any* notice regarding disability ratings or effective dates when those elements are not directly made an issue by the claimant. To the contrary, as explained below, general section 5103(a) and § 3.159(b) notice must be given on these elements of the service-connection claim. Further, because the duty to provide notice is premised upon the receipt of a substantially complete application for benefits, it follows that the content of such notice must be defined by a reasonable and liberal reading of the application actually filed.

Regarding the disability-rating element, the Court holds that the Secretary, in order to comply with section 5103(a), must notify the claimant of any information, and any medical or lay evidence, not previously provided to the Secretary, that is necessary to establish a disability rating for each of the disabilities contemplated by the claim and allowed under law and regulation. Specifically, the Secretary must, at a minimum, notify the claimant that, should service connection be awarded, a schedular or extraschedular disability rating will be determined by applying relevant diagnostic codes in the rating schedule, found in title 38, Code of Federal Regulations, to provide a disability rating from 0% to as much as 100% (depending on the disability involved) based on the nature of the symptoms of the condition for which disability compensation is being sought, their severity and duration, and their impact upon employment. Moreover, consistent with the statutory and regulatory history, that notice must provide examples of the types of medical and lay evidence that the claimant could submit (or ask VA to obtain) that are relevant to establishing a disability–e.g., competent lay statements describing symptoms, medical and hospitalization records, medical statements, employer statements, job application rejections, and any other evidence showing exceptional circumstances relating to the disability. *See* 66 Fed. Reg. at 45,622. Concerning the effective-date element, the Secretary must notify the claimant that the effective date of an award of service connection and any assigned disability rating(s) will be determined based on when VA receives the claim, when the evidence that establishes the basis for a disability rating that reflects that level of disability was submitted, or on the day after the veteran's discharge from service if the claim that is the basis for

17

which service connection is awarded is submitted within one year after discharge. *See Wright v. Gober*, 10 Vet.App. 343, 347 (1997).

If the claimant's application suggests there is specific information or evidence necessary to resolve an issue relating to elements of a claim, VA must consider that when providing notice and tailor the notice to inform the claimant of the evidence and information required to substantiate the elements of the claim reasonably raised by the application's wording. *See Suttman v. Brown*, 5 Vet.App. 127, 132 (1993) (where application "reasonably reveals" that claimant is seeking a particular benefit, VA is required to adjudicate the issue of claimant's entitlement to that benefit). In that regard, it is important to realize that the appeal in *AB* was decided long before the enactment of the VCAA and in an altogether different context–there, the Court was deciding whether the veteran's appeal, initiated by an NOD filed prior to the Veterans' Judicial Review Act, Pub. L. No. 100-687, § 402, 102 Stat. 4105, 4122 (1988) "was fully satisfied by the RO's September 1988 award of a 30% disability rating for PTSD, so that subsequent proceedings may be said to have pertained to a separate claim as to which a new valid NOD could have been filed." *AB*, 6 Vet.App. at 38. The Court answered that question in the negative after determining that nothing in the veteran's NOD or Substantive Appeal "evince[d] an intent to limit the issue on appeal to entitlement to only a 30% rating." *Id.* at 39.

Applying the broad holding in *AB* in the VCAA-notice context in order to construe an award of benefits as a "partial award granted," *post* at 36, merely because a claimant disagrees with an assigned rating or effective date after his claim has been substantiated, would be to divorce the VCAA notice requirements from their rightful place within the administrative adjudication scheme and to illogically intermingle them with the notice and assistance required by the provisions of law relating to the VA appeals process. That said, we leave open the question of what would result if a claimant reasonably raised an issue regarding disability rating and effective date in his initial application for benefits rather than for the first time as part of disagreement with a decision.

### 2. Timing of Notice

Section 5103(a) notice must be provided to a claimant "[*u*]*pon receipt* of a complete or substantially complete application." 38 U.S.C. § 5103(a) (emphasis added); *see* 38 C.F.R.

18

§ 3.159(b)(1) ("[w]hen VA receives a complete or substantially complete application for benefits," it will give requisite notice). In *Pelegrini*, we found that nothing in the statute or regulations specified the *precise* point during the VA claims process when section 5103(a) notice must be given. *Pelegrini*, 18 Vet.App. at 119-20. Therefore, we held that, as to the service-connection element of a claim, section 5103(a) notice and the notice contemplated in § 3.159(b)(1) must be provided *prior to* an initial unfavorable decision by an AOJ. *Id*. at 120; *see Mayfield*, 19 Vet.App. at 110 (reiterating *Pelegrini* holding). We hold here that the timing requirement enunciated in *Pelegrini* applies equally to the initial-disability-rating and effective-date elements of a service-connection claim. The general notice on those elements, as explained earlier, must precede any initial adjudication on them. *See Pelegrini*, *supra*. Timely notice will give the claimant a meaningful opportunity to act responsively and "to participate effectively" in the development of the claim. *Mayfield*, 19 Vet.App. at 120-21.

### 3. Section 5103(a) in the Statutory Scheme

Section 5103(a) notice must be considered within its place in the VA adjudication scheme. *See* 2A N. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION § 46:05 (6th ed. 2000) [hereinafter SUTHERLAND] ("[T]he court will not only consider the particular statute in question, but also the entire legislative scheme of which it is a part."); *see also King v. St. Vincent's Hosp*., 502 U.S. 215, 221 (1991) (holding that when interpreting statute, court is required to look at context and provisions of law as a whole); *Imazio Nursery, Inc. v. Dania Greenhouses*, 69 F.3d 1560, 1564 (Fed. Cir. 1995) (holding that all parts of a statute must be construed together without according undue importance to a single or isolated portion). Moreover, the VA statutory scheme "should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error." SUTHERLAND, § 46:06; *see also Splane v. West*, 216 F.3d 1058, 1068-69 (Fed. Cir. 2000).

Within the VA adjudicatory scheme, section 5103(a) is focused on notice that is required to be provided to a claimant upon receipt of a complete or substantially complete application for benefits and prior to an initial adjudication. *See Mayfield* and *Pelegrini*, both *supra*. Once a

19

claimant's disability is determined to be service connected, a disability rating and an effective date are assigned. After the initial decision on the claim, the Secretary, under section 5104(a), must provide to the claimant timely notice of that decision including an explanation of the procedure for obtaining review of the decision. 38 U.S.C. § 5104(a). "In any case where the Secretary denies a benefit sought, [the notice of that denial] shall also include (1) a statement of the reasons for the decision, and (2) a summary of the evidence considered by the Secretary." 38 U.S.C. § 5104(b). Furthermore, regulatory § 3.103(b) provides:

> Claimants and their representatives are entitled to notice of any decision made by VA affecting the payment of benefits or the granting of relief. Such notice shall clearly set forth the decision made, any applicable effective date, the reason(s) for the decision, the right to a hearing on any issue involved in the claim, the right of representation and the right, as well as the necessary procedures and time limits, to initiate an appeal of the decision.

38 C.F.R. § 3.103(b).

A claimant may disagree with the assigned rating or effective date by filing an NOD. 38 U.S.C. § 7105. Under section 7105, "where the claimant . . . files [a timely NOD] with the decision of the [RO], [the RO] will take such development or review action as it deems proper under the provisions of regulations not inconsistent with this title. If such action does not resolve the disagreement . . . [the RO] shall prepare a[n SOC]." 38 U.S.C. § 7105(d)(1). An SOC must include (1) a summary of the evidence in the case pertinent to the issue or issues with which disagreement has been expressed; (2) a citation to pertinent laws and regulations and a discussion of how such laws and regulations affect the agency's decision; and (3) the decision on each issue and a summary of the reasons for such decision. *Id.* Accordingly, once VA receives an NOD, sections 5103A and 7105(d) and § 3.103(b) require VA to take appropriate additional development and review action and, if the disagreement continues, to inform the claimant of how he or she can be awarded an EED or a higher rating based on the evidence and the law. Thus, assuming notice has been properly tailored to the application presented, the statutory scheme contemplates that once a decision awarding service connection, a disability rating, and an effective date has been made, section 5103(a) notice has served its purpose, and its application is no longer required because the claim has already been substantiated.

20

This position is supported amply by the legislative history of the VCAA, wherein the Committees on Veterans' Affairs (Committees) noted their intent that the term "substantiate . . . be construed to mean 'tending to prove' or 'to support.'" 146 CONG. REC. H9912-15 (Oct. 17, 2000) (Explanatory Statement by the House and Senate Committees on Veterans' Affairs). The Committees went on to explain that "[i]nformation or evidence necessary to substantiate a claim need not prove a claim–although it eventually may do so when a decision on a claim is made–but it needs to support a claim or give form and substance to a claim." *Id.* In cases where service connection has been granted and an initial disability rating and effective date have been assigned, the typical service-connection claim has been more than substantiated–it has been proven, thereby rendering section 5103(a) notice no longer required because the purpose that the notice is intended to serve has been fulfilled.

Indeed, other statutory and regulatory provisions are in place to ensure that a claimant receives assistance throughout the appeals process. As held in *AB* and *Shoemaker,* both *supra*, a veteran contesting a rating or effective date is presumed to be seeking the maximum benefit available under the law. Therefore, VA is required, under sections 7105(d) and 5103A, to advise the appellant of what is necessary to obtain the maximum benefit allowed by the evidence and the law. The SOC required by section 7105(d)(1) must be complete enough to allow the appellant to present argument to the Board regarding any disagreement with the RO decision on any element of the claim. 38 C.F.R. § 19.29 (2005). The claimant may submit additional evidence after receipt of the SOC for consideration by both the RO and the Board. 38 C.F.R. § 19.37 (2005). To hold that section 5103(a) continues to apply after a disability rating or an effective date has been determined would essentially render sections 7105(d) and 5103A and their implementing regulations insignificant and superfluous, thus disturbing the statutory scheme. *See Imazio* and *Splane*, both *supra*.

### 4. Rule of Prejudicial Error

The parties have had ample opportunity in their pleadings and at oral argument to contend that any notice error is prejudicial. *See In Re: 38 U.S.C. § 7261(b)(2) and Mayfield v. Nicholson*, 19 Vet.App. 103 (2005), Misc. No. 3-05, __ Vet.App. __ (June 2, 2005) (en banc order) (allowing, in cases involving asserted notice noncompliance under 38 U.S.C. § 5103(a) and/or 38 C.F.R.

21

§ 3.159(b)(1), supplemental briefing regarding requirements and standards set forth in *Mayfield*, *supra*). The appellants argue that, where VA has failed to comply with the VCAA notice requirements, the effect of the error cannot be evaluated because of an inadequate record and that the rule of prejudicial error, 38 U.S.C. § 7261(b)(2), therefore cannot be applied. App. *Din*. Suppl. Br. at 16 (relying on *Wagner v. United States*, 365 F.3d 1358, 1365 (Fed. Cir. 2004)); App. *Har*. Suppl. Br. at 12-13 (same). The appellants and amicus NOVA further argue that if the rule of prejudicial error is applied in section 5103(a) cases, the burden of proving nonprejudice should be on VA because of the uniquely pro-claimant nature of the VA adjudication system and VA's duty to assist a claimant in fully developing the record. App. *Din*. Suppl. Br. at 21-25; App. *Har*. Suppl. Br. at 13-16; Amicus NOVA Br. at 39-46. Mr. Dingess further argues that the burden should be on the Secretary to demonstrate that VA's error was not prejudicial because the Secretary is the party asserting that VA's error was not prejudicial. App. *Din*. Suppl. Br. at 25.

The Secretary, in contrast, argues that the burden lies with an appellant and that an appellant must assert the argument or issue that he or she would have raised if proper notice had been provided or must state what material evidence he or she was unable to present because of the notice error. Sec'y *Har.* Suppl. Br. at 11. The Secretary also contends that, in order to show prejudice, an appellant must allege and demonstrate that the outcome of the case was affected by the error. Sec'y *Din.* Suppl. Br. at 15. The Secretary argues further that if an appellant is unable to carry this burden then a notice error is not prejudicial. Sec'y *Har*. Suppl. Br. at 15.

In *Mayfield*, we addressed how this Court "take[s] due account of the rule of prejudicial error" under 38 U.S.C. § 7261(b)(2) when considering section 5103(a)/§ 3.159(b)(1) notice errors involving a service-connection claim, including the burdens on an appellant and the Secretary. *Mayfield*, 19 Vet.App. at 112-21. "Once [such] an appellant has demonstrated an error below[,] he or she generally bears a responsibility to initiate consideration of the issue of prejudice, that is, the appellant carries the burden of going forward with a plausible showing of how the essential fairness of the adjudication was affected by that error." *Id.* at 119. "If an appellant has met the burden of going forward, by asserting with specificity how an error was prejudicial, it becomes the Secretary's burden to demonstrate that the error was clearly nonprejudicial to the appellant–that is, that the error

22

is not one that affected 'the essential fairness of the [adjudication]'." *Id*. at 120 (citation omitted) (quoting *McDonough Power Equip.,* 464 U.S. at 553-54).

In discussing prejudice in the notice context, we held in *Mayfield* as follows:

> [W]e conclude that in the section 5103(a) notice context an appellant generally must identify, with considerable specificity, how the notice was defective and what evidence the appellant would have provided or requested the Secretary to obtain (e.g., a nexus medical opinion) had the Secretary fulfilled his notice obligations; further, an appellant must also assert, again with considerable specificity, how the lack of that notice and evidence affected the essential fairness of the adjudication. When the appellant has met the burden of going forward with such a plausible showing of prejudice, then the Secretary must demonstrate a lack of prejudice by persuading the Court that the purpose of the notice was not frustrated–e.g., by demonstrating (1) that any defect in notice was cured by actual knowledge on the part of the appellant that certain evidence (i.e., the missing information or evidence needed to substantiate the claim) was required and that she should have provided it, or (2) that a reasonable person could be expected to understand from the notice provided what was needed, or (3) that a benefit could not possibly have been awarded as a matter of law.

*Id*. at 121. We also held that "if the asserted error is found by the Court to exist and to be of the type that has the 'natural effect' of producing prejudice, an appellant need not have pled prejudice and it is the Secretary's burden to demonstrate lack of prejudice in terms of the fairness of the adjudication." *Id.* (quoting *Kotteakos v. United States*, 328 U.S. 750, 760 (1946)). The Court further held that any error regarding the first notice element was of the type that has the "natural effect" of producing prejudice. *Id*. at 122. For late notice, second- and third-element notice error, or error in fourth-element notice, we held that such errors are not of the type that have the "natural effect" of producing prejudice, and that an appellant, pursuant to Rule 28 of the Court's Rules of Practice and Procedures, must plead prejudice in terms of the fairness of the adjudication. *Id*. at 122-23.

When content-complying but late notice is provided–such as at the time of or after the RO decision–the claimant would, under *Mayfield*, have to come forward with a plausible showing of how the essential fairness of the adjudication was affected by that late notice. *See* 38 U.S.C. § 7261(b)(2); *Mayfield*, 19 Vet.App. at 128; *see also Conway*, *supra*. If the claimant meets that burden, then the Secretary has the burden to demonstrate that the late notice was clearly nonprejudicial to the claimant–that is, that the late notice did not affect the essential fairness of the

adjudication. *See Mayfield*, *supra*. Whether the claimant is prejudiced by any late section 5103(a) notice depends on the factual situation in a particular case. *See id.* at 128-29 (holding that claimant was not prejudiced by late section 5103(a) notice where fairness of VA adjudication was unaffected because claimant had meaningful opportunity to participate effectively in VA's processing of her claim as demonstrated by her actions during pendency of claim at VA to obtain missing evidence in order to substantiate claim).

### C. Application of Notice Requirements to Instant Cases

#### *1.* Dingess *Appeal*

**a. Duty to Notify Regarding PTSD Claim.** In May 2000, the RO awarded Mr. Dingess service connection for PTSD and assigned him a temporary total disability rating for the duration of his in-patient treatment program and a 10% rating thereafter, effective from June 22, 1999. *Din. R.* at 38, 220-26. Thus, Mr. Dingess' PTSD claim was *substantiated* in May 2000 and, therefore, at the time of the enactment of the VCAA, VA no longer had any further duty to notify Mr. Dingess on how to substantiate his PTSD claim. Moreover, as stated above, his filing an NOD as to disability rating did not trigger additional section 5103(a) notice. Rather, VA was then required to fulfill its statutory duties under 38 U.S.C. §§ 5104 and 7105 and regulatory duties under 38 C.F.R. § 3.103. Therefore, we hold that the Board did not commit prejudicial error in concluding that the May 2001 VCAA-notice letter the Secretary had provided to Mr. Dingess complied with section 5103(a) and § 3.159(b) because, after his PTSD claim was substantiated in May 2000, such notice was not required. *Cf. Mayfield*, 19 Vet.App. at 129 ("[w]here the claimant has received compliant notice, any Board reasons-or-bases deficiency in discussing how section 5103(a) . . . notice has been satisfied in this case would of necessity be nonprejudicial to the claimant.").

**b. VA's Duties Regarding Appeal of PTSD Claim.** As required under sections 5104(b) and 7105(d) and § 3.103(b), VA provided Mr. Dingess with the January 2001 DRO decision (*Din*. R. at 390-92) and January 2001 SOC (*Id*. at 376-88). The January 2001 DRO decision, provided the following explanation regarding its denial of a higher rating than 30%:

> A higher evaluation of 50[%] is not warranted unless there is reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week;

difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships.

On exam[ination Mr. Dingess] was alert and oriented in all three spheres, in good contact with routine aspects of reality and showed no signs or symptoms of psychosis. He spoke in normal tones but his rhythm and rate were somewhat subdued and withdrawn. Conversation was generally relevant, coherent, and goal directed. He seemed rather isolated, sad, withdrawn, and very low keyed and passive. He described himself in a rather detailed manner and lent the impression of an individual who is more of a victim than he really is. Mood appeared to be depressed and his affect was under responsive, though certainly not flattened. Memory and intellect appeared to be intact, and insight and judgment for major things did not appear to be impaired. He is shown to have [PTSD], chronic, moderate and chronic polysubstance abuse, in short remission . . . [and he] showed an antisocial personality disorder. GAF was 60. Outpatient treatment reports . . . show ongoing psychiatric treatment, and note [the veteran] does not have suicidal or homicidal thoughts.

*Din.* R. at 390-91. The January 2001 SOC, under the heading "Pertinent Laws; Regulations; Ratings Schedule Provisions," set forth the relevant diagnostic code (DC) for PTSD (38 C.F.R. § 4.130, DC 9411 (2000)), and included a description of the rating formula for all possible schedular ratings for PTSD from 0% to 100%. *Din.* R. at 384-86. The decision and the SOC thus informed Mr. Dingess that he did not have evidence to support a 50% schedular rating and told him what was needed not only to achieve a 50% schedular rating, but also to obtain all schedular ratings above the 30% rating that the RO had assigned. In a letter accompanying the January 2001 SOC (*Din.* R. at 376) and a notice of decision letter sent that same month to Mr. Dingess (*d.* at 395-98), the RO, as required, also notified him of how to appeal the decision on his claim. Both letters provided Mr. Dingess the forms he needed to complete the appeal his case. Therefore, VA complied with the procedural statutory requirements of 38 U.S.C. §§ 5104(b) and 7105(d), as well as the regulatory requirements in § 3.103(b), and continued to assist Mr. Dingess, under section 5103A, by informing him of what was necessary to achieve a higher initial rating for his service-connected PTSD.

    *c. Duty to Notify Regarding TDIU Claim.* The record before the Board revealed that, in his June 1999 claim, Mr. Dingess stated that previously he had been self-employed but at the time of the

claim, because of his service-connected disabilities, was not working. *Din*. R. at 63. However, an October 1999 VA PTSD examination revealed that Mr. Dingess had stated that he continued to operate his furniture and appliance shop from his garage at that time. *Id*. at 103. Based on this latter statement, the RO denied Mr. Dingess' TDIU claim in May 2000. *Id*. at 220-25. He appealed that decision. *Id*. at 231. At the time of the enactment of the VCAA, Mr. Dingess' TDIU claim remained unsubstantiated and was on appeal to the Board; therefore, he was entitled to section 5103(a) and § 3.159(b) notice on that claim. *See Pelegrini*, *supra*. The record does not contain any document that either satisfies those notice requirements or in any way reveals that Mr. Dingess received such notice. *See Din.* R. 1-464. Thus, VA erred by not providing adequate section 5103(a) and § 3.159(b) notice on his TDIU claim. *See Mayfield* and *Quartuccio*, both *supra*. Having found error, we examine whether this error was prejudicial. *See Mayfield* and *Conway*, both *supra*.

Because the natural effect of first-element notice error is to produce prejudice, the Secretary has the "burden of demonstrating that there was clearly no prejudice . . . based on any failure to give notice." *Mayfield*, 19 Vet.App. at 122. Following the Federal Circuit's remand in *Conway, supra*, the Secretary filed a supplemental brief in which he addresses the issue of prejudice in the context of section 5103(a). Sec'y *Din*. Suppl. Br. at 12-18. Despite the opportunity to argue lack of prejudice, the Secretary did not so argue but, rather, maintained that the appellant had failed to satisfy what the Secretary contended was *the appellant's* burden of demonstrating prejudice. The Secretary did not argue the alternative position, that is, that the Secretary had met his burden of demonstrating a lack of prejudice. Even after Mr. Dingess argued in his supplemental brief that once a section 5103(a) notice error has been established, the Secretary bears the burden of demonstrating that the error was not prejudicial, the Secretary still did not argue that there was a lack of prejudice. *See* Sec'y *Din*. Suppl. Br. at 21-25.

The Secretary has not persuaded us that the purpose of the notice requirement was not frustrated–by demonstrating, e.g., that (1) any defect in notice was cured by actual knowledge on the part of the appellant that certain evidence was required and that he should have provided it in order to obtain an extraschedular rating*;* (2) a reasonable person could be expected to understand from the notice provided what was needed; or (3) an extraschedular rating could not possibly have been

awarded as a matter of law.  *See Mayfield*, 19 Vet.App. at 121.  Therefore, the Secretary has not met his burden of demonstrating that the notice error was not prejudicial.  Accordingly, the Board erred in concluding that the Secretary fulfilled his statutory and regulatory obligations as to the first notice requirement in connection with the extraschedular component of the disability-rating element.  Our conclusion that the Secretary failed to provide the first-notice requirement necessarily subsumes a conclusion that the Secretary also failed to notify Mr. Dingess about who would be responsible for seeking to obtain the information and evidence required by the first notice requirement.  Thus, because of these errors, the TDIU-rating claim and the matter of an extraschedular rating under § 4.16 will be remanded for complying notice and readjudication.

     ***d. Duty to Assist.***  Under 38 U.S.C. § 5103A, the Secretary "shall make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate the claimant's claim for a benefit under a law administered by the Secretary."  The Secretary's duty to assist a claimant includes, among other things, "providing a medical examination or obtaining a medical opinion when such an examination or opinion is necessary to make a decision on the claim."  38 U.S.C. § 5103A(d)(1); *see* 38 C.F.R. § 3.159(c) (2005).  Additionally, 38 C.F.R. § 4.1 (2005) requires that when applying the rating schedule, "accurate and fully descriptive medical examinations are required, with emphasis upon the limitation of activity imposed by the disabling condition."  Further, 38 C.F.R. § 4.2 (2005) requires that if an examination report used for rating a service-connected disability does not contain sufficient detail, "it is incumbent upon the rating board to return the report as inadequate for evaluation purposes."  *See Bowling v. Principi*, 15 Vet.App. 1, 12 (2001) (emphasizing Board's duty to return inadequate examination report).  Where the record does not adequately reveal the current state of the claimant's disability, VA must assist by providing the claimant a thorough and contemporaneous medical examination that considers the claimant's prior medical examinations and treatment.  *See Suttmann*, 5 Vet.App. at 138; *Proscelle v. Derwinski*, 2 Vet.App. 629, 632 (1992); *Green v. Derwinski*, 1 Vet.App. 121, 124 (1991); 38 C.F.R. § 4.1.

     Mr. Dingess contends that the VA PTSD medical examinations that he received in October 1999 (*Din.* R. at 98-104) and November 2000 (*id.* at 371-74) were inadequate because they did not address sufficiently the effect of his PTSD on his ability to work.  App. *Din.* Br. at 3.  We are not so

27

persuaded. Both examinations did address the effect of Mr. Dingess' PTSD on his ability to work. *See Din.* R. at 98-104, 371-74. In the 1999 examination, the examiner noted: "While the veteran does appear to be suffering from [PTSD], he seems able to function relatively well and continues to run his own used furniture and appliance shop out of his garage." *Id*. at 103. The 2000 examiner stated:

> His lack of concentration and his inability to focus his effort as well as his lack of desire to become involved with people, have caused him to end his small business of selling used appliances and furniture out of his house. . . . He believes he came back from Vietnam a changed person and that this led to his history of drug and alcohol abuse, his history of illegal behaviors[,] and his inability to obtain and maintain substantially gainful employment.

*Id*. at 372. The examiner concluded that Mr. Dingess was competent and employable. *Id*. at 374. The Board relied on that conclusion in determining that the preponderance of the evidence was against awarding Mr. Dingess a TDIU rating. *Id*. at 11. We are satisfied that the Secretary fulfilled his duty to assist under section 5103A(d)(1) by providing Mr. Dingess with thorough and contemporaneous medical examinations, which adequately discussed the effect of Mr. Dingess' service-connected PTSD on his ability to work, as required under § 4.2. *See* 38 C.F.R. § 3.159; *see also Green*, *supra* (holding that RO must provide "a thorough and contemporaneous medical examination, one which takes into account the records of prior medical treatment, so that the evaluation of the claimed disability will be a fully informed one"). The Board therefore did not err by relying on those examinations.

As we concluded above, however, we must remand the TDIU matter because of the notice error. Just as the Secretary must provide complying notice, VA must also ensure that the record includes a contemporaneous medical opinion regarding whether Mr. Dingess possesses any occupational impairment as defined by § 4.16(a) and (b). *See* 38 U.S.C. § 5103A(d); 38 C.F.R. § 4.1; *see also Caffrey v. Brown*, 6 Vet.App. 377, 380-81 (1994) (concluding that new examination was required because prior examination, conducted 23 months before Board decision, was too remote to be considered contemporaneous for the veteran's increased-rating claim); *Proscelle*, *supra* (holding that VA examination must be conducted where "record does not adequately reveal the current state of the claimant's disability"); *Green*, *supra*.

28

Because the TDIU matter is being remanded for further adjudication, the Court will not address the remaining arguments raised by Mr. Dingess regarding his claim for a TDIU rating. *See Best v. Principi*, 15 Vet.App. 18, 20 ( 2001) ("A narrow decision preserves for the appellant an opportunity to argue those claimed errors before the Board at the readjudication, and, of course, before this Court in an appeal, should the Board rule against him.") On remand, he is free to submit additional evidence and argument and the Board must consider any such evidence or argument submitted. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002); *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). The Board shall proceed expeditiously, in accordance with 38 U.S.C. § 7112. Should the Board rule against Mr. Dingess and should he appeal, he will have the opportunity to present any allegations of error to this Court. *See Best*, *supra*.

 *e.*  ***Reasons or Bases.***   Mr. Dingess argues that the Board failed to provide an adequate statement of reasons or bases under 38 U.S.C. § 7104(d)(1) because it did not address whether his PTSD claim warranted extraschedular consideration under 38 C.F.R. § 3.321(b)(1). App. *Din*. Br. at 2-5. The Secretary maintains that the Board was not obligated to discuss § 3.321(b)(1) because the record contains no competent evidence that Mr. Dingess' disabilities cause "'such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards.'" Sec'y *Din*. Suppl. Br. at 19-20 (quoting 38 C.F.R. § 3.321(b)(1)).

 Before deciding a claim, the Board is required to consider all relevant evidence of record and to consider and discuss in its decision all "potentially applicable" provisions of law and regulation. *Schafrath v. Derwinski*, 1 Vet.App. 589, 593 (1991); *see* 38 U.S.C. § 7104(a); *Weaver v. Principi*, 14 Vet.App. 301, 302 (2001) (per curiam order). The Board is also required to include in its decision a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990). That statement must be adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See Allday* and *Gilbert*, both *supra*. In complying with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence that

it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the veteran. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995) *aff'd*, 78 F.3d 604 (Fed. Cir. 1996) (table); *Gilbert*, *supra*.

Under VA regulation

[r]atings shall be based as far as practicable, upon the average impairments of earning capacity with the additional proviso that the Secretary shall from time to time readjust this schedule of ratings in accordance with experience. To accord justice, therefore, to the exceptional case where the schedular evaluations are found to be inadequate, the Under Secretary for Benefits or the Director, Compensation and Pension Service, upon field station submission, is authorized to approve on the basis of the criteria set forth in this paragraph an extra-schedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities. The governing norm in these exceptional cases is: A finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards.

38 U.S.C. § 3.321(b). In order to determine whether the Board erred by not discussing § 3.321(b)(1), we must first determine whether Mr. Dingess specifically sought extraschedular evaluation. The Board is required to address every issue "reasonably raised from a liberal reading of the documents or oral testimony submitted prior to the [Board] decision." *Floyd v. Brown*, 9 Vet.App. 88, 96 (1996); *see EF v. Derwinski*, 1 Vet.App. 324, 326 (1991); *Myers v. Derwinski*, 1 Vet.App. 127, 129 (1991). "'Where such review . . . reasonably reveals that the claimant is seeking a particular benefit, the Board is required to adjudicate the issue of the claimant's entitlement to such a benefit or, if appropriate, to remand the issue to the [RO] for development and adjudication of the issue; however, the Board may not simply ignore an issue so raised.'" *Beverly v. Nicholson*, 19 Vet.App. 394, 404-05 (2005) (quoting *Suttman*, 5 Vet.App. at 132); *see also Brannon v. West*, 12 Vet.App. 32, 34 (1998). However, the Board is not required to anticipate a claim for extraschedular evaluation when it was neither specifically nor reasonably raised. *See Talbert v. Brown*, 7 Vet.App. 352, 356-57 (1995) (holding that Board is not required to do "prognostication" but to review issues reasonably raised by Substantive Appeal).

Mr. Dingess raises for the first time in his appeal to the Court a request for extraschedular consideration. *See* App. *Din*. Br. at 2-5; *see also Din*. R. at 1-464. In fact, in his January 2001 appeal

30

to the Board for a higher initial PTSD disability rating and his August 2001 appeal to the Board regarding the TDIU determination, Mr. Dingess, through counsel, expressly limited his claim to one for "an increased *schedular* rating for his service-connected condition of PTSD." *Din.* R. at 400, 403, 456 (emphasis added). Although VA is required, with respect to all *pro se* pleadings, to give a sympathetic reading to a veteran's filings, *see Andrews v. Nicholson*, 421 F.3d 1278, 1282 (Fed. Cir. 2005) (citing *Szemraj v. Principi*, 357 F.3d 1370, 1373 (Fed. Cir. 2004)), Mr. Dingess has been represented by counsel since January 2001 (*Din.* R. at 405-07) and prior to that he was represented by veterans service organizations (*Din.* R. at 68, 220, 337, 390). Even considering a liberal reading of all documents and oral testimony in the record, including Mr. Dingess' initial application, NOD, and Substantive Appeal, he has never revealed any intent to seek extraschedular consideration under § 3.321(b)(1). *See Beverly* and *Suttman*, both *supra*. Accordingly, Mr. Dingess has not requested extraschedular consideration under § 3.321(b)(1).

We now review whether the Board erred in failing to address sua sponte extraschedular consideration under § 3.321. *See Smallwood v. Brown*, 10 Vet.App. 93, 98 (1997) (Board must address "the issue of whether an extra-schedular rating is warranted [when it] is reasonably raised by the Board's own factual findings"); *see also Moody v. Principi*, 360 F.3d 1306, 1310 (Fed. Cir. 2004) ("VA [is required to] give a sympathetic reading to the veteran's filings by 'determining all potential claims raised by the evidence, applying all relevant laws and regulations.'" (quoting *Szemraj*, 357 F.3d at 1373)); *Grantham v. Brown*, 8 Vet.App. 228, 235 (1995) (although extraschedular consideration under § 3.321(b)(1) "was not raised by the veteran, 'the [Board was] not free to ignore its own regulations[]' [and] the Board should have given the veteran extra-schedular consideration or explained why it is not applicable" (citations omitted)).

In *Sanchez-Benitez*, the Federal Circuit vacated this Court's holding that remand was not required for consideration of § 3.321(b)(1). *Sanchez-Benitez v. Principi*, 259 F.3d 1356 (Fed. Cir. 2001). Mr. Sanchez-Benitez had argued that VA erred by failing to discuss § 3.321(b)(1) in light of a VA General Counsel opinion (regarding the precise DC in that matter) that stated that § 3.321(b)(1) must be considered if there was evidence of "exceptional or unusual circumstances." *Id*. at 1362. The Federal Circuit held that this Court erred when "on its own, [it] found that there was nothing in the

31

record to suggest that Mr. Sanchez-Benitez's case was 'exceptional or unusual.'" *Id*. at 1363.  Given this holding by the Federal Circuit, we are mindful that we may not, sua sponte, review the record and make factual determinations in the first instance as to whether a veteran's disability picture presents such an exceptional or unusual case as to render the schedular evaluations inadequate.  However, we do not read *Sanchez-Benitez* to limit our ability, and in fact our obligation, to review the question of whether the Board failed to satisfy its reasons or bases requirement under section 7104(d)(1) by not considering or discussing § 3.321(b)(1).  To interpret *Sanchez-Benitez* to the contrary would require the Court to remand every matter where a claimant argues in the first instance on appeal that the Board's reasons or bases were inadequate because § 3.321(b)(1) was not discussed.  Thus, in cases such as Mr. Dingess', the Court's review is limited to the facts found by the Board and to a determination of whether, based on those facts, a claim for § 3.321(b)(1) extraschedular consideration was reasonably raised and should have been discussed.  *See Smallwood v. Brown*, 10 Vet.App. 93, 98 (1997) (where § 3.321(b)(1) claim is reasonably raised by Board's own factual findings, its failure to address referral issue in its decision constitutes error).

Here, the Board found that Mr. Dingess' service-connected PTSD symptoms produce no more than a moderate disability and that "the service-connected PTSD alone is not shown to prevent the veteran from obtaining and maintaining substantially gainful employment consistent with his education and employment experience." *Din.* R. at 2-3.  The Board found that, prior to May 1999, Mr. Dingess had no previous hospital admissions or psychiatric treatment; that he received outpatient treatment at a VA mental health clinic in May 1999; that he was admitted in June 1999 to a VA substance abuse program from which he was discharged in July 1999; and that he was admitted to a 12-week VA inpatient program for treatment of substance abuse and PTSD symptoms.  *Id*. at 6-7.  The Board noted that Mr. Dingess revealed in a November 2000 VA medical examination that he had decided to end his small business because of his lack of concentration and his lack of desire to become involved with people and that the examiner found him to be competent and employable.  *Id*. at 8.  The Board specifically found: "Notwithstanding the veteran's recent decision to end his business, the evidence of record does not show that he has had difficulty establishing or maintaining effective work and social relationships." *Id*. at 9.  Based, therefore, not on any factual determination

by the Court, *see Sanchez-Benitez, supra*, but rather upon the Board's factual determinations, the Court holds that Mr. Dingess' disability picture is not so exceptional or unusual as to reasonably raise the issue of extraschedular consideration under § 3.321(b)(1). Thus, because § 3.321(b)(1) was neither specifically sought by Mr. Dingess nor reasonably raised by the facts found by the Board, the Board did not err in not discussing § 3.321(b)(1) in its statement of reasons or bases. *Cf. Smallwood* and *Grantham*, both *supra*.

## 2. Hartman *Appeal*

*a. **Duty to Notify Regarding PTSD Claim.*** Because the RO decision awarding service connection and assigning a disability rating and an effective date for Mr. Hartman's PTSD was issued in August 1999, prior to the November 9, 2000, enactment of the VCAA, the RO did not err by not providing notice before that decision. Nevertheless, VA's regulations implementing the VCAA were made retroactively applicable to all cases still pending before VA as of November 9, 2000. Mr. Hartman's claim was on appeal before VA as of November 9, 2000, and thus was pending at VA at the time of the VCAA's enactment. Therefore, the VCAA applied to his claim. *See Mayfield*, 19 Vet.App. at 128; *Pelegrini*, *supra*.

However, as with Mr. Dingess' claim, section 5103(a) notice was not required for Mr. Hartman's PTSD claim because that claim had been *substantiated* before November 9, 2000. In August 1999, he was awarded service connection for his PTSD, and assigned a 70% disability rating with an April 15, 1999, effective date (*Har.* R. at 144-48), and in February 2000, the RO awarded a TDIU rating, effective from April 15, 1999 (*id*. at 177-79). Therefore, the Board did not commit prejudicial error by concluding that VA had satisfied its section 5103(a) and § 3.159(b) notice requirements because that notice was not required after his PTSD claim was substantiated in August 1999. *Cf. Mayfield*, 19 Vet.App. at 129.

*b. **VA's Duties Regarding Appeal of PTSD Claim.*** As required under sections 5104(b) and 7105(d) and § 3.103(b), VA provided Mr. Hartman with July 1999 and February 2000 RO decisions (*Har.* R. at 144-48, 176) and a May 2001 SOC (*id*. at 184). In the July 1999 RO decision, the RO stated: "Entitlement to benefits sought is *established from the date of the claim* [April 15, 1999]."

33

*Id.* at 148 (emphasis added). January 2000 correspondence from the RO to Mr. Hartman informed him:

> [VA] received [his] original claim for entitlement to disability compensation for [PTSD] on September 15, 1986. On December 18, 1986, [VA] denied [his] claim because [he] did not report for a [scheduled VA medical] examination . . . . [VA] received [his] claim for reconsideration of the prior denial of PTSD on April 15, 1999. [The RO] decision of July 30, 1999, granted entitlement to PTSD effective April 15, 1999, the date we received your claim. Under current law, the effective date cannot be earlier than the date the claim was received by VA.

*Id.* at 174. The May 2001 SOC set out the provisions of 38 C.F.R. § 3.400 (2000), including § 3.400(a) (regarding facts found) and § 3.400(b)(2)(i) (regarding assigning day following discharge as effective date based on receipt of application within one year after date of discharge), and 38 U.S.C. § 3.401 (2000) and cited 38 U.S.C. § 5110 as the authority for these provisions. *Id.* at 185-94. Under the section heading "Reasons and Bases," the May 2001 SOC cited to 38 C.F.R. § 3.400(b)(2)(i) and explained the criteria governing effective dates for direct service connection for disability-compensation claims. *Id.* at 194. The SOC noted that the RO "decision of [July 30, 1999,] granted service connection for [PTSD] from the date of the claim which was received [April 15, 1999]." *Id.* The SOC thus informed Mr. Hartman that the effective date assigned was based on the date on which VA had received his claim and that to receive an EED the claim would have to have been received within one year after separation from service, or VA would have to have received the claim earlier than April 15, 1999. In letters accompanying the July 1999 RO decision (*id.* at 144-45), the February 2000 RO decision (*id.* at 176), and the May 2001 SOC (*id.* at 185), the RO notified Mr. Hartman of how to appeal his claim as required under § 3.103(b), and all of the letters included attachments of the necessary forms that he would need to complete to start the appellate process. Therefore, VA complied with the procedural statutory requirements of 38 U.S.C. §§ 5104(b) and 7105(d), as well as the regulatory requirements in § 3.103(b), and continued to assist Mr. Hartman, under section 5103A, by informing him of what was necessary to achieve an EED for his service-connected PTSD.

To the extent that Mr. Hartman asserts that his mental illness should toll the one-year period for filing his NOD (App. *Har*. Suppl. Br. at 13-15), we reject that argument. There is no indication

34

in the ROA *that an NOD was actually filed* in this case.  *See Har.* R. at 1-207.  In *McPhail v. Nicholson*, we held that, even assuming that equitable tolling applied to the one-year period for filing an NOD, there was no basis for seeking equitable tolling of the NOD-filing period where a claimant did not file an NOD during the one-year period commencing when he or she first learned of the RO decision to be challenged and never submitted an NOD at all.  *McPhail*, 19 Vet.App. 30, 34 (2005) (per curiam order), *appeal docketed*, No. 05-7118 (Fed. Cir. Mar. 10, 2005).  As stated in *McPhail*, "[e]quitable tolling of a time period is generally available to perform an action within that period only if the action had actually been performed."  *Id.*

Mr. Hartman's argument that the Board erred by not finding that VA, by not obtaining the medical records from the VA facilities identified in his November 1986 letter to VA, had, under *Hayre*, *supra*, committed a grave procedural error (App. *Har.* Br. at 8-10 (citing *Har.* R. at 94)), is also rejected.  Mr. Hartman acknowledges that, after the February 2002 Board decision, the Federal Circuit in *Cook v. Principi*, 318 F.3d 1334 (Fed. Cir. 2002) (en banc), overruled the grave-procedural-error concept in *Hayre*.  He asserts, however, that he is making the argument to protect his interests in the event of a reversal of *Cook*, in which a petition for a writ of certiorari had been filed but not yet ruled on at the time that he filed his brief.  App. *Har.* Br. at 8-10.  In June 2003, the U.S. Supreme Court denied that petition. *Cook v. Principi*, 539 U.S. 926 (2003).  Accordingly, his argument on grave procedural error is now unavailing.

## IV.  CONCLUSION

On the basis of the foregoing analysis, the ROA, and the parties' pleadings, and having "take[n] due account of the rule of prejudicial error" under 38 U.S.C. § 7261(b)(2), that part of the October 2001 Board decision that denied Mr. Dingess an initial disability rating higher than 30% is AFFIRMED.  That part of the October 2001 Board decision that denied Mr. Dingess TDIU is VACATED and that matter is REMANDED for expeditious further development and issuance of a readjudicated decision supported by an adequate statement of reasons or bases.

Additionally, on the basis of the foregoing analysis, the ROA, and the parties' pleadings, and having "take[n] due account of the rule of prejudicial error" under 38 U.S.C. § 7261(b)(2), the Court

in *Hartman* will withdraw the July 22, 2004, single-judge dispositive order. Mr. Hartman has not demonstrated that the Board committed prejudicial error in its findings of fact, conclusions of law, compliance with procedural requirements, articulation of reasons or bases, or application of the equipoise standard that would warrant reversal or remand. Therefore, the February 2002 Board decision in *Hartman* is AFFIRMED.

KASOLD, *Judge* concurring in part and dissenting in part: As so clearly stated in the Court's opinion, the question before the Court is "whether the notice provisions of [section 5103(a)] apply to the assignment of an initial disability rating (*Dingess* appeal) and effective date (*Hartman* appeal) in association with an award of VA service-connection disability compensation." *Ante* at 2. The Court holds today that they do, as do the pleading requirements established in our precedential decision in *Mayfield v. Nicholson*, 19 Vet.App. 103 (2005), *argued*, No. 05-7157 (Fed. Cir. Feb. 6, 2006). *See ante* at 11-14. I fully concur. I also fully agree with the holdings of the Court that "(1) section 5103(a) requires notice to a claimant of how a VA service-connection claim may be substantiated as to all five elements of that claim and (2) that certain standards apply for the timing and content of that notice," *ante* at 2, as further described in sections III.A, B.1, and B.2. And, I agree with the resultant vacatur, in part, and affirmance, in part, of the *Dingess* Board decision and the affirmance of the *Hartman* Board decision. *See ante* at 35. However, I must respectfully dissent in part for the reasons set forth below.

I dissent from the narrow exception created today for claims involving a partial award granted in an initial adjudication that occurred prior to the November 9, 2000, enactment of the VCAA, which, inter alia, amended section 5103(a) to explicitly impose the duty on the Secretary to notify a claimant what information or evidence is necessary to substantiate the claim. *See ante* 24, 33 (finding no error because the current section 5103(a) requirements were not in effect when the claims were substantiated and, because the claim was substantiated, the Secretary's regulatory retroactive application of the section 5103(a) notice requirements was inapplicable). The creation of this narrow exception is unwarranted. It is the Secretary, not the Court, that has been given the authority to write regulations implementing law. *See* 38 U.S.C. § 501(a) ("The Secretary has authority to prescribe all

rules and regulations which are necessary or appropriate to carry out the laws administered by the Department and are consistent with those laws . . . .").

In this instance, the Secretary explicitly made the regulations implementing section 5103(a) applicable to all claims pending "before VA" upon the enactment of the VCAA or any new claim filed thereafter. *See* 66 Fed. Reg. 45,620, 45,629 (Aug. 29, 2001). Although the Secretary expressly carved out exemptions to the retroactive application of the VCAA, he did not exempt claims that had been partially granted prior to the enactment of the VCAA. Furthermore, the Board considered section 5103(a) applicable, as evidenced in the cases before us today. *See Din*. R. at 3-4 (*Dingess* Board reviewed notice for Secretary's compliance with section 5103(a)); *Har*. R. at 3-4 (*Hartman* Board, same). Yet, absent any *Chevron* analysis, the Court today creates an exception to the Secretary's regulation. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-45 (1984) (Court gives deference to executive department's reasonable interpretation of statutory scheme). By making the regulations implementing the revised section 5103(a) applicable to all claims then pending "before VA" upon the enactment of the VCAA, the Secretary obviously intended to benefit claimants by making sure adequate notice on how to substantiate a claim was provided to each veteran, no matter where in the administrative process that claim hailed. *See also Pelegrini v. Principi*, 18 Vet.App. 112, 120 (2002) ("the appellant has the right on remand [from the Court to the Board] to VCAA content-complying notice and proper subsequent VA process"). It was a proper exercise of the Secretary's authority, and I perceive no basis for the Court's creation of an exception thereto.

Moreover, the creation of this narrow exception is not only unwarranted, it is unnecessary. Our traditional approach of assessing error and prejudice suffices. As to the PTSD claims of both Mr. Dingess and Mr. Hartman, there was no error for the failure of the Secretary to provide either claimant with section 5103(a) notice prior to the initial adjudication of the claims because the section 5103(a) notice requirements had not yet become law. *See Pelegrini*, 18 Vet.App. at 120. On the other hand, we should hold that the Secretary erred by failing to provide Mr. Dingess and Mr. Hartman with the required notice before issuance of a subsequent, post-VCAA, adjudication of their claims. *See id*. at 120, 122-23. Applying the rule of prejudice, however, we should further hold that the notice received

37

throughout the appellate process in each case rendered any section 5103(a) error nonprejudicial because it permitted both Mr. Dingess and Mr. Hartman the opportunity to fully participate in the processing of their respective claims. *See Mayfield*, 19 Vet.App. at 128 ("there could be no prejudice if the purpose behind the notice has been satisfied, that is, affording a claimant a meaningful opportunity to participate effectively in the processing of her claim by VA" (citations omitted)).

I also disagree with the majority's conclusion that, although a claimant is presumed to be seeking the maximum benefit, *see AB v. Brown*, 6 Vet.App. 35, 38 (1993) (quoting 38 C.F.R. § 3.103(a) (1992) (requiring the Secretary to "render a decision which grants every benefit that can be supported in law while protecting the interests of the Government")); *see also ante* at 14-15, 21, a claim is somehow substantiated even though a claimant continues to appeal his award. This confuses the finding of service connection with the award of the maximum benefit authorized by law. When the latter is granted, the claim is substantiated. Prior to that, at best, the claim is substantiated only in part. Claimants seek VA benefits, not an element of the claim for benefits, and, in disability claims, they seek the maximum compensation authorized by law. *See* 38 U.S.C. § 1110 (authorizing payment of disability *compensation* to veterans who suffered disease or injury in the line of duty); 38 U.S.C. § 1131 (same); *see also AB*, *supra*; 38 C.F.R. § 3.103(a) (2005). There is little doubt that the claimant seeking disability compensation who receives an award of service connection, an effective date, and a 0% disability rating (with no compensation) will wonder how the claim for compensation could be considered substantiated. *See United States v. Wilson*, 503 U.S. 329, 336-37 (1992) (rejecting any interpretation of statute requiring that Court "to stretch the meaning of the words"); *see also* THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1284 (New College ed. 1976) (defining "substantiate" as to "verify").