Citation Nr: 1134098 
Decision Date: 09/12/11 Archive Date: 09/22/11

DOCKET NO. 10-05 437 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee


THE ISSUE

Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU). 


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States


ATTORNEY FOR THE BOARD

H. A. Hoeft, Associate Counsel


INTRODUCTION

The Veteran served on active duty from August 1958 to August 1962. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a March 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Nashville, Tennessee, which denied the claim for entitlement to TDIU. 

The claim was previously before the Board in May 2011, at which time it was remanded for further development. 

This appeal is part of the VA's Expedited Claims Adjudication (ECA) initiative, a pilot program designed to accelerate claims and appeals processing. 

The issues of whether new and material evidence has been submitted to reopen a previously denied claim of entitlement to service connection for varicose veins of the lower extremity, and entitlement to service connection for deep vein thrombosis of the left lower extremity (to include as secondary to varicose veins) as well as fatigue, depression, and insomnia have been raised by the record, but have not been adjudicated by the Agency of Original Jurisdiction (AOJ). See VA Form 21-4138, August 2011. Therefore, the Board does not have jurisdiction over them and they are referred to the AOJ for appropriate action. 


FINDINGS OF FACT

1. Service connection is in effect for posttraumatic stress disorder (PTSD), rated at 50 percent; third degree burns to the left leg, rated at 40 percent; third degree burns to the right leg, rated at 40 percent; second degree burns to the right chest, rated at 0 percent (noncompensable); donor site scars of the lower abdomen, rated at 0 percent (noncompensable); and donor site scars of the bilateral thighs, rated at 0 percent (noncompensable). His combined disability rating is 80 percent. As such, the percentage criteria for TDIU are met.

2. The Veteran's service-connected disabilities are not shown to be of such a nature or severity to prevent him from obtaining or retaining substantially gainful employment. 

CONCLUSION OF LAW

The criteria for the assignment of a total disability rating based on individual unemployability have not been met. 38 U.S.C.A. §§ 1155, 5103, 5107(a) (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.321, 3.340, 3.341, 4.16 (2010).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Duties to Notify and Assist

Review of the claims folder reveals compliance with the Veterans Claims Assistance Act of 2000 (VCAA), 38 U.S.C.A. § 5100 et seq. See 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). Proper VCAA notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 U.S.C.A. § 5103(a); C.F.R. § 3.159(b)(1). Pelegrini v. Principi, 18 Vet. App. 112 (2004).

In Pelegrini, the United States Court of Appeals for Veterans Claims (Court) held that VCAA notice, as required by 38 U.S.C. § 5103(a), must be provided to a claimant before the initial unfavorable adjudication by the RO.

The Court has also held that the VCAA notice requirements of 38 U.S.C.A. 
§ 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim. Those five elements include: 1) Veteran status; 2) existence of a disability; 3) a connection between the Veteran's service and the disability; 4) degree of disability; and 5) effective date of the disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). The Court held that upon receipt of an application for a service-connection claim, 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) require VA to review the information and the evidence presented with the claim and to provide the claimant with notice of what information and evidence not previously provided, if any, will assist in substantiating or is necessary to substantiate the elements of the claim as reasonably contemplated by the application. Additionally, this notice must inform a claimant that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. Id.

The Board notes that in letters dated in September 2008 and June 2011 the RO provided notice to the Veteran regarding what information and evidence is needed to substantiate his claim, as well as what information and evidence must be submitted by the Veteran and the types of evidence that will be obtained by VA. Additionally, the September 2008 notice letter informed the Veteran as to disability ratings and effective dates.

Because the notice pursuant to Dingess came before the initial adjudication of the claim, the timing of the notice complied with the requirement that the notice must precede the adjudication. Thus, the Board concludes that the duty to notify has been met.

A remand by the Board confers on the claimant, as a matter of law, the right to compliance with the remand orders. Stegall v. West, 11 Vet. App. 268, 271 (1998). The Board, in May 2011, instructed the AOJ to obtain all up-to-date treatment records and schedule the Veteran for VA examination, to include a mental status evaluation and scar evaluation. The Board finds that the AOJ has complied with those instructions. It obtained current VA treatment records and provided the Veteran with the requested examinations in July 2011. The VA examinations report substantially comply with the Board's remand directives. Stegall v. West, 11 Vet. App. 268 (1998).

The record also reflects that VA has made reasonable efforts to obtain relevant records adequately identified by the Veteran. Specifically, the information and evidence that have been associated with the claims file include the Veteran's service treatment records, and VA treatment records and VA examination reports. Also of record and considered in connection with the appeal are various written statements submitted by the Veteran and his representative.

As discussed above, the Veteran was notified and aware of the evidence needed to substantiate his claim, the avenues through which he might obtain such evidence, and the allocation of responsibilities between himself and VA in obtaining such evidence. The Veteran was an active participant in the claims process, identifying pertinent medical evidence and submitting evidence. Thus, he has been provided with a meaningful opportunity to participate in the claims process and has done so. Any error in the sequence of events or content of the notice is not shown to have any effect on the case or to cause injury to the Veteran. Therefore, any such error is harmless and does not prohibit consideration of this matter on the merits. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006); see also ATD Corp. v. Lydall, Inc., 159 F.3d 534, 549 (Fed. Cir. 1998).

Governing Laws and Regulations for TDIU

A total rating based on unemployability due to service-connected disabilities may be granted where the schedular rating is less than total and the service-connected disabilities preclude the Veteran from obtaining or maintaining substantially gainful employment consistent with his education and occupational experience. 38 C.F.R. §§ 3.340, 3.341, 4.16.

If there is only one such disability, it must be rated at 60 percent or more, and if there are two or more disabilities, there shall be at least one disability rated at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent. 38 C.F.R. § 4.16(a). Disabilities resulting from a common etiology or a single accident will be considered as one disability. 38 C.F.R. 
§ 4.16(a)(1).

For those Veterans who fail to meet the percentage standards set forth in 38C.F.R. § 4.16(a), total disability ratings for compensation may nevertheless be assigned when it is found that the service-connected disabilities are sufficient to produce unemployability; such cases should be referred to the Director, Compensation and Pension Service, for extra-schedular consideration. 38 C.F.R. § 4.16(b).

The central inquiry is, "whether the Veteran's service-connected disabilities alone are of sufficient severity to produce unemployability." Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). Neither nonservice-connected disabilities nor advancing age may be considered in the determination. 38 C.F.R. §§ 3.341, 4.19; Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993).

Facts 

The Veteran contends that his service-connected disabilities render him unemployable. Specifically, he states that he retired in 1998 from his employment as a truck driver due to pain, fatigue, and insomnia associated with his service-connected disabilities. He has not worked since October 1998. His claim for TDIU was received in August 2008. 

The Veteran is service connected for the following disabilities: PTSD, rated at 50 percent; third degree burns to the left leg, rated at 40 percent; third degree burns to the right leg, rated at 40 percent; second degree burns to the right chest, rated at 0 percent, or noncompensable; donor site scars of the lower abdomen, rated at 0 percent, or noncompensable; and donor site scars of the bilateral thighs, rated at 0 percent, or noncompensable. 

His combined evaluation for compensation is 80 percent. He accordingly meets the schedular threshold for consideration for a TDIU under 38 C.F.R. § 4.16(a). Accordingly, the remaining question is whether his service-connected disabilities are sufficient by themselves to render him unemployable.

A June 1998 VA Form 21-4192 from the Veteran's former employer notes that the Veteran worked as a road driver from 1963 to 1997; the stated reason for termination of employment was retirement. 

The Veteran underwent a C&P examination for mental disorders in December 2008. This particular examination was conducted in connection with a claim of entitlement to service connection for depression. The claim for service connection for depression was ultimately denied in a March 2009 rating decision. In any event, at the time of the December 2008 VA examination, the Veteran was noted as cooperative and attentive; his affect was appropriate; and his mood was "good." He denied having sleep impairment; panic attacks, and/or homicidal/suicidal thoughts. His impulse control was "good" and there were no reported episodes of violence. He was able to maintain his personal hygiene. There were no noted problems with activities of daily living. He was capable of managing his financial affairs. Employment history summary noted that the Veteran retired in October 1998 after 34 years of truck driving. He stated that his retirement was due to feeling fatigued during his last few years of work. He was diagnosed with depressive disorder. Again, the Veteran is not currently service connected for this particular mental disorder (i.e., depression). 

The Veteran underwent a C&P examination for his service-connected scars in November 2008. The examiner noted that none of the scars were tender to palpation; adhered to the underlying tissue; resulted in limited motion/loss of function; or resulted in underlying soft tissue damage. No opinion as to employability was rendered at that time. 

In a May 2009 VA treatment, the Veteran reported avoiding certain things that reminded him of his in-service injury. He also reported losing interest in activities and isolating himself from others. His sleep varied from three to six hours. Objectively, his eye contact was good. His mood was dysphoric. Affect was moderately restricted but appropriate. Thought process was logical and coherent. The Veteran acknowledged suicidal/homicidal ideations but with no formal plans. He denied hallucinations. He was oriented and alert. The Veteran reported that he had "retired" from truck driving. 

The Veteran underwent a C&P examination for his service-connected PTSD in November 2009. Subjective complaints included anhedonia, anxiety, avoidance of crowds, hypervigilance, loss of interest, and sleep disturbance. Objectively, the Veteran was alert and oriented; his speech was clear and coherent; his thought processes showed no unusual ideations, signs, or symptoms of any formal thought disorder; he denied auditory/visual hallucinations; and he reported no suicidal or homicidal ideations. His judgment showed no impaired ability to manage daily living activities or to make reasonable life decisions. The Veteran reported no resulting impairment to household chores, shopping, personal hygiene, or family relationships. He reported moderate impairment with respect to social/interpersonal relationships, and occupation/career. The examiner also found moderate impairment from an occupational viewpoint. However, he did not provide an opinion as to employability. 

The Veteran underwent C&P examinations July 2011 for the specific purpose of determining whether his service-connected PTSD and scar disabilities affected his ability to work. The Veteran denied any changes in his physical health since the time of his last examination in November 2009. He reported that he was in generally good health. He also reported positive responses to anti-depressant mediations, which seem to mitigate his affective symptoms. Overall, he indicated that his medications were quite helpful and that they reduce his depression and anxiety to tolerable levels. 

Subjectively, the Veteran reported that he struggled with depression, fatigue, and lethargy on a daily/weekly basis. When asked about the recent escalation in his depressive symptoms, he noted that his mood had declined commensurate with his wife's decline in health. With respect to psycho-social functioning, the Veteran denied any significant changes since the time of his last VA examination in 2009. It was noted that he has remained married to his current spouse of several decades and described their relationship as generally positive. He has also maintained close contact with his adult sons and a few friends. Lastly, he did report some decrease in recreational pursuits. However, this was attributed to his wife's declining health. 

Objectively, the Veteran was neatly groomed; his speech was unremarkable; and his mood was mildly dysphoric. He was oriented to person, time, and place. His thought process/content was unremarkable. He had no delusions. His intelligence was average. He reported sleep impairment and daytime lethargy. However, the examiner stated that the Veteran's sleep impairment did not interfere with daytime activities to a clinically significant degree. The Veteran did report homicidal thoughts, but denied suicidal thoughts and panic attacks. His impulse control was "good." There were no obsessive/ritualistic behaviors. He had no problems with activities of daily living. The examiner also found that there was no evidence that the Veteran was incapable of handling his financial affairs. 

The examination report notes that the Veteran was a truck driver and that he retired in 1997 as he was eligible by age and/or duration of work. This is confirmed by a statement from the Veteran's employer, provided in 1998.

The VA examiner concluded that the PTSD did not result in total occupational and social impairment; that the PTSD did not result in deficiencies in most areas (judgment, thinking, mood, work, etc.); that there was no reduced reliability or productivity as a result of the PTSD; that there was no occasional decrease in work efficiency or period of inability to perform occupational tasks due to PTSD; and that the PTSD symptoms were transient/mild and reduced work efficiency only during periods of significant stress. 

The examiner further noted that the Veteran had been able to maintain gainful employment over a several decade period and that, in his opinion, the Veteran would "in no way be classified as unemployable based solely on his service-connected mental disorder." 

In sum, the July 2011 VA examiner opined that, based upon the results of the examination, the current GAF, and his overall psycho-social functioning, the Veteran would in no way be classified as unemployable due to his PTSD. He based this opinion on the "reality that the Veteran presents with mild, to occasionally, moderate PTSD and has been able to maintain relatively intact psycho-social functioning throughout his life. Specifically, his preserved functionality included successful occupational and work performance for a several-decade period." While the Veteran reported that his PTSD underminded his work productivity, it was limited to and circumscribed by periods of escalating stress. Moreover, even during periods of stress, the examiner noted that the Veteran was able to maintain satisfactory job performance and was in good standing with his employer. 

He concluded that the Veteran would be "entirely capable of securing gainful employment and would not be classified as unemployable based solely on his SC mental disorder alone." 

The Veteran's contemporaneous scar examination reached the same conclusion. Namely, the VA examiner opined that there were no "significant" effects on the Veteran's occupation or usual daily activities as a result of the service-connected scars. None of the scars were noted as tender to palpation or resulting in limited motion or loss of function. 

Analysis 

With regard to whether the Veteran's service-connected disabilities are of sufficient severity to produce unemployability, the Board finds that they are not. Indeed, none of the medical evidence shows that the Veteran's scars, either alone or in concert with the PTSD, play a part whatsoever in the Veteran's employability. Moreover, the psychological/psychiatric evaluations and VA examinations of record do not show that the service-connected PTSD is of sufficient severity to render him unemployable. To the extent that the Veteran argues that he has PTSD symptoms of "fatigue" and "lethargy" which cause employment difficulties, the July 2011 VA examiner expressly found that his sleep impairment did not interfere with daytime activities to a "clinically significant degree." Moreover, the examiner noted that the Veteran suffers from depressive symptomatology (i.e., sadness, amotivation, and lethargy/fatigue) that has escalated over the last year due to his wife's declining health. He also has a diagnosis of adjustment disorder with depressed mood. While some individuals with PTSD also suffer co-morbidly with depression, the VA examiner attributed his recent increase in depressive symptoms to the noted family medical stressor, and not to the service-connected PTSD. In any event, the examiner ultimately concluded that the Veteran was entirely capable of securing gainful employment despite these PTSD symptoms. 

Lastly, the Board notes that the Veteran's PTSD is rated as 50 percent disabling. Notably, this rating does not contemplate complete occupational impairment. 

The only medical opinions on point, those of the July 2011 VA examiners, are against the claim. In this regard, the examiners thoroughly reviewed the claims file and examined the Veteran. The PTSD examiner opined that the Veteran would "in no way be classified as unemployable due to his PTSD." This was based soundly upon the results of the examination, the current GAF, and his overall "preserved" psycho-social functioning. In sum, the examiner concluded that the Veteran was entirely capable of securing gainful employment and that he would not be classified as unemployable based solely on his PTSD alone. 

Likewise, the VA skin examiner concluded that the scars had no significant effects on the Veteran's occupation. Again, objectively, none of the service-connected scars to the lower extremities, chest, and abdomen were tender or painful upon examination; nor did they result limited motion, underlying soft tissue damage, or skin breakdown/ulceration. 

The Veteran has never submitted any medical evidence, nor does the medical evidence of record show, that his service-connected disabilities, either alone or in concert, render him unemployable. Instead, the evidence shows that while the PTSD may have a moderate effect on his employability, neither it, nor his scars renders him unemployable. 

The Board acknowledges that the Veteran's assertions that he has serious limitations due to his service-connected PTSD and scars. However, his service-connected disabilities are simply not shown to preclude employment. As to his complaints that service-connected disabilities present certain limitations, he retains the ability to perform work-like activity as indicated above in the July 2011 VA examination report. No medical professional has opined that the Veteran's service-connected disabilities actually render him unable to obtain or maintain substantially gainful employment. 

For all the foregoing reasons, the claim for a TDIU must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as no competent, persuasive evidence supports the claim, that doctrine is not applicable. See 38 U.S.C.A. § 5107(b); 38 C.F.R. 
§ 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

Lastly, the Board notes that consideration of entitlement to TDIU on an extraschedular basis under 38 C.F.R. § 4.16(b) need not be discussed, as the Veteran met the minimum criteria under 38 C.F.R. § 4.16(a). 


ORDER

A TDIU is denied. 



____________________________________________
MARJORIE A. AUER
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs