Citation Nr: 1331586 
Decision Date: 09/30/13 Archive Date: 10/02/13

DOCKET NO. 08-34 691 ) DATE
 )
 )



On appeal from the
Department of Veterans Affairs Regional Office in Cleveland, Ohio




THE ISSUE

Entitlement to an initial rating higher than 10 percent for a right elbow disability.




ATTORNEY FOR THE BOARD

N. L. Northcutt, Counsel








INTRODUCTION

The Veteran, who is the appellant, served on active duty from July 1989 to October 1992, including service in Operation Just Cause for which he was awarded the Combat Infantryman Badge.

This matter is before the Board of Veterans' Appeals (Board) on appeal of a rating decision in March 2008 of a Department of Veterans Affairs (VA) Regional Office (RO).

In February 2012, the Board remanded the case to afford the Veteran a hearing before the Board, as the notice of the previously scheduled hearing had been mailed to an incorrect address. The hearing was rescheduled for October 2012, but the Veteran requested that the hearing be rescheduled. The hearing was then rescheduled for April 2013; however, the Veteran failed to appear for the rescheduled hearing. Under 38 C.F.R. § 20.704, the hearing request is deemed withdrawn.

In July 2013, the Board remanded the case for further development, which has been completed.


FINDING OF FACT

The right elbow disability is manifested by objective evidence of pain, flexion to more than 90 degrees, full extension, and pronation from to 0 to 80 degrees, supination from 0 to 85 degrees without evidence of ankylosis of the elbow, flail joint, nonunion of the radius and ulna with flail false joint, ulna or radius malunion or nonunion, or impairment of supination or pronation.





CONCLUSION OF LAW

The criteria for an initial rating higher than 10 percent for a right elbow disability have not been met. 38 U.S.C.A. §§ 1155, 5107(b) (West 2002 & Supp. 2013); 38 C.F.R. §§ 4.7, 4.71a, Diagnostic Codes 5205-13 (2013).

The Veterans Claims Assistance Act of 2000 (VCAA)

The VCAA, codified in part at 38 U.S.C.A. §§ 5103, 5103A, and implemented in part at 38 C.F.R § 3.159, amended VA's duties to notify and to assist a claimant in developing information and evidence necessary to substantiate a claim.

Duty to Notify

Under 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b), when VA receives a complete or substantially complete application for benefits, it will notify the claimant of the following: (1) any information and medical or lay evidence that is necessary to substantiate the claim, (2) what portion of the information and evidence VA will obtain, and (3) what portion of the information and evidence the claimant is to provide.

Also, the VCAA notice requirements apply to all five elements of a service connection claim. The five elements are: (1) veteran status; (2) existence of a disability; (3) a connection between the veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. Dingess v. Nicholson, 19 Vet. App. 473 (2006).

The VCAA notice must be provided to a claimant before the initial unfavorable adjudication by the RO. Pelegrini v. Principi, 18 Vet. App. 112 (2004).





The RO provided pre-adjudicatory VCAA notice in October 2007 on the underlying claim of service connection. Where, as here, service connection has been granted and the initial rating has been assigned, the claim of service connection has been more than substantiated, it has been proven, thereby rendering 38 U.S.C.A. § 5103(a) notice no longer required because the purpose that the notice was intended to serve has been fulfilled.

Furthermore, once a claim for service connection has been substantiated, the filing of a notice of disagreement with the RO's decision does not trigger additional 38 U.S.C.A. § 5103(a) notice. Therefore, further VCAA notice under 38 U.S.C.A. § 5103(a) and § 3.159(b)(1) is no longer applicable in the claim for a higher rating following the initial grant of service connection. Dingess, 19 Vet. App. 473.

Duty to Assist

Under 38 U.S.C.A. § 5103A, VA must make reasonable efforts to assist the claimant in obtaining evidence necessary to substantiate a claim. The RO has obtained service treatment records, VA records, and private treatment records and afforded the Veteran VA examinations. The Veteran was informed of the unavailability of certain VA treatment records by telephone contact and letter in February 2009, and a related formal finding of unavailability is of record.

Further, VA has conducted a necessary medical inquiry in an effort to substantiate the claim for increase for a right elbow disability. As the VA examination reports are based on consideration of the prior medical history and described the disability in sufficient detail so that the Board's review of the claim is a fully informed one, the medical examinations rendered are adequate. Stefl v. Nicholson, 21 Vet. App. 120, 123 (2007). 

As there is no indication of the existence of additional evidence to substantiate the claim, the Board concludes that no further assistance to the Veteran in developing the facts pertinent to the claim is required to comply with the duty to assist.


REASONS AND BASES FOR FINDING AND CONCLUSION

Principles of Rating Disabilities

Disability evaluations are determined by the application of VA's Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and their residual conditions in civil occupations. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1.

General Rating Principles

A disability rating is determined by application of VA's Schedule for Rating Disabilities (Rating Schedule). The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and their residual conditions in civil occupations. Separate Diagnostic Codes identify the various disabilities. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1.

VA has a duty to acknowledge and consider all regulations that are potentially applicable through the assertions and issues raised in the record, and to explain the reasons and bases for its conclusions. Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. 




The Board will consider whether separate ratings may be assigned for separate periods of time based on facts found, a practice known as 'staged ratings,' whether it is an initial rating case or not. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

In rating a disability of the musculoskeletal system, the rating factors include functional loss due to pain, supported by adequate pathology and evidenced by the visible behavior in undertaking the motion, and weakness. 38 C.F.R. § 4.40; see DeLuca v. Brown, 8 Vet. App. 202, 206-07 (1995).

With respect to joints, the factors to consider are more or less than normal movement, weakened movement, excess fatigability, incoordination, pain on movement, swelling, deformity, or atrophy of disuse. 38 C.F.R. § 4.45; see DeLuca at 206-07.

Also with arthritis or periarticular pathology, painful motion is factor to be considered. 38 C.F.R. § 4.59.

Also pain with limited functional ability during flare-ups when a joint is used repeatedly is a factor. See DeLuca at 206-07.

Rating Criteria

The right elbow disability has been evaluated as 10 percent disabling based on limitation of elbow flexion.

As there is no evidence of arthritis of the right elbow joint, an evaluation under the Diagnostic Codes for arthritis is not applicable.

For the elbow, the applicable Diagnostic Codes are Diagnostic Codes 5206, 5207, and 5213. 



The Veteran is right handed and the right elbow is a dominant or major extremity. 

Under Diagnostic Code 5206, limitation of flexion of the forearm of the dominant upper extremity to 100 degrees is 10 percent disabling. Limitation of flexion of the forearm of the dominant upper extremity to 90 degrees is 20 percent disabling.

Under Diagnostic Code 5207, limitation of extension of the forearm to 60 degrees is 10 percent disabling. Extension limited to 75 degrees is 20 percent disabling.

Under Diagnostic Code 5213, for impairment of supination or pronation of the dominant upper extremity, limitation of supination to 30 degrees or less warrants a 10 percent rating and limitation of pronation with motion lost beyond the last quarter arch where the hand does not approach full pronation warrants a 20 percent rating.

Normal or full range of motion of the elbow is from zero degrees of extension to 145 degrees of flexion. 38 C.F.R. § 4.71, Plate I. Also, normal or full range of motion of the forearm is from 0 degrees to 80 degrees of pronation and from 0 degrees to 85 degrees of supination. 38 C.F.R. § 4.71, Plate I.

Facts

In August 2007, the Veteran sought treatment for right elbow pain, at which time elbow flexion was limited to about 90 degrees. An MRI study and x-rays showed joint effusion and an inter-articular osteochondral fragment (loose body). In November 2007, the Veteran complained of pain with full elbow flexion and extension. Flexion was about 100 to 110 degrees and extension was normal without pain.

In January 2008, the Veteran underwent arthroscopic surgery to remove the loose body. As chondromalacia of the radial head was discovered during surgery, a chondroplasty of the radial head was also performed.


On VA examination in February 2008, the Veteran complained of right elbow pain with activities such as cutting, writing, and reaching with his right hand. On physical examination, flexion was to 110 degrees with pain. Extension was painful in the last 5 degrees of the range of motion. There was no additional limitation of motion on repetitive motion.

On VA examination in May 2009, the Veteran complained of right elbow limitation of motion and occasional flare-ups of aching and throbbing sensations, triggered by changes in weather and heaving lifting. He stated that the right elbow swelling had ceased after he had surgery in 2008 and that he did not experiencing any lack of endurance. 

On range of motion testing, flexion was to 125 degrees, supination was to 85 degrees, and pronation was to 80 degrees without pain and without any additional limitation of motion on repetitive testing. 

On VA examination in July 2013, right elbow supination and pronation were to 85 degrees and flexion was to 135 degrees with pain beginning at 130 degrees, and no additional limitation of motion on repetitive testing. The VA examiner characterized the functional loss of the right elbow as manifested by pain on movement. Muscle strength testing of the right elbow on flexion and extension was normal. There was no evidence of ankylosis. 

The VA examiner noted four surgical scars related to the surgery in 2008, but characterized the scars as neither painful, unstable, nor covering an area greater than 39 square centimeters (six square inches). X-rays of the right elbow were ordered, but the Veteran failed to return to allow completion of the x-rays.







Analysis

The right elbow disability is primarily manifested by limitation of flexion. While flexion was to about 90 degrees in August 2007. In November 2007, three months later flexion was to about 100 to 110 degrees. In February 2008, flexion was to about 110 degrees, after which the range of flexion continued to improve, as flexion was to 125 degrees in May 2009 and to 135 degrees in July 2013. 

Reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability, the Board places greater weight on the ranges of motion over almost a six year period from November 2007 to July 2013, in which flexion ranged from 100 to 135 degrees, than a single finding over a three month period in 2007. In other words, the consistent disability picture shows that flexion is greater than 90 degrees. 38 C.F.R. § 4.2.

As flexion is consistently greater than 90 degrees, the disability picture does not more nearly approximate or equate to limitation of flexion to 90 degrees, the criteria for a 20 percent rating under Diagnostic Code 5206. 

As for extension, except for pain in the last 5 degrees of extension, extension is not limited to 45 degrees, and the criteria for a separate rating for limitation of extension under Diagnostic Code 5207 are not met, considering 38 C.F.R. §§ 4.40, 4.45, and DeLuca.

Supination to 85 degrees does not more nearly approximate or equate to supination limited to 30 degrees or less, the criteria for a separate compensable rating under Diagnostic Code 5213, considering 38 C.F.R. §§ 4.40, 4.45, and DeLuca. 







Pronation to 80 and 85 degrees does not more nearly approximate or equate to loss of motion beyond the last quarter of the arc (normal is 80 degrees and the last quarter of the arc would start at 20 degrees), where the hand does not approach full pronation, the criteria for a separate compensable rating under Diagnostic Code 5213, considering 38 C.F.R. §§ 4.40, 4.45, and DeLuca. 

Therefore, the criteria for a rating higher than 10 percent based on limitation of flexion under Diagnostic Code 5206 is not warranted. And separate compensable ratings for limitation of extension under Diagnostic Code 5207 or limitation of supination or pronation under Diagnostic Code 5213 are not warranted.

While the Veteran does experience pain, the pain does not result in functional loss of flexion to 90 degrees or extension or supination or pronation to a compensable level. See Mitchell v. Shineski, 25 Vet. App. 32, 43 (2011) (pain must affect some aspect of normal movement in order to constitute functional loss under 38 C.F.R. § 4.40). To this extent, the Board places greater weight on the objective findings of the examinations than the Veteran's subjective complaints of pain. 38 C.F.R. §§ 4.40, 4.45; DeLuca.

With respect to potential application of other criteria, there is no evidence of ankylosis, flail joint fracture, or an impairment of the radius or the ulna resulting in malunion or nonunion, and Diagnostic Codes 5205, 5209, 5210, 5211, and 5212 do not apply. In light of the above, the Board finds that there is no Diagnostic Code that provides a basis for assigning a higher rating for the right elbow disability. The Board concludes that the preponderance of the evidence is against the claim for an initial rating higher than 10 percent for a right elbow disability. 

The Veteran has not raised and the record does not raise separate ratings for scars.

The Board has given consideration to the propriety of "staged ratings" for the right elbow disability over the period of time since service connection became effective. Fenderson, 12 Vet. App. 119. 




The Board concludes that the evidence does not show that the severity of the right elbow disability meets the criteria for a 20 percent rating since the effective date of service connection in 2007. 

As the preponderance of evidence against the claim, the benefit-of-the-doubt standard of proof does not apply. 38 U.S.C.A. § 5107(b).

Extraschedular Consideration

Although the Board is precluded by regulation from assigning an extraschedular rating under 38 C.F.R. § 3.321(b)(1) in the first instance, the Board is not precluded from considering whether the case should be referred to the Director of VA's Compensation and Pension Service for such a rating.

The threshold factor for extraschedular consideration is a finding that the evidence presents such an exceptional disability picture that the available schedular rating for the service-connected disability is inadequate. This is accomplished by comparing the level of severity and symptomatology of the service-connected disability with the established criteria.

If the criteria reasonably describe the disability level and symptomatology, then the disability picture is contemplated by the Rating Schedule, and the assigned schedular rating is, therefore, adequate, and referral for an extraschedular rating is not required. Thun v. Peake, 22 Vet. App. 111 (2008).

The Board finds that the rating criteria reasonably describe the symptomatology of the Veteran's right elbow disability, namely pain on motion and limitation of flexion, which are encompassed in the Rating Schedule under the applicable Diagnostic Codes. 





In other words, the Veteran does not experience any symptomatology not already encompassed by the Rating Schedule, and the assigned schedular rating is, therefore, adequate, and no referral for an extraschedular rating is required under 38 C.F.R. § 3.321(b)(1).

A Total Disability Rating Based on Individual Unemployability

The Veteran does not raise and the record does not reasonably raise, a claim for total disability rating for compensation based on individual unemployability as the Veteran has been employed throughout the appeal. See Rice v. Shinseki, 22 Vet. App. 447 (2009) (in a claim for increase, where the Veteran expressly raises a claim for a total disability rating on the basis of individual unemployability or the claim is reasonably raised by the record, the claim is not a separate claim, but a part of a claim for increase). 


ORDER

An initial rating higher than 10 percent for a right elbow disability is denied.



____________________________________________
George E. Guido Jr.
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs