Citation Nr: 1334644 
Decision Date: 10/30/13 Archive Date: 11/06/13

DOCKET NO. 07-28 841 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Cheyenne, Wyoming


THE ISSUE

Entitlement to a total disability rating based on individual unemployability (TDIU), to include on an extraschedular basis.

[A separate Board decision addresses the issue of service connection for back disability].


REPRESENTATION

Appellant represented by: The American Legion


WITNESS AT HEARING ON APPEAL

Appellant



ATTORNEY FOR THE BOARD

K. J. Kunz, Counsel


INTRODUCTION

The Veteran served in the Air National Guard. He had an initial period of active duty from April 1965 to September 1965. Thereafter he continued in the Air National Guard until June 1986.

This appeal comes before the Board of Veterans' Appeals (Board) from a January 2007 rating decision by the Cheyenne, Wyoming Regional Office (RO) of the United States Department of Veterans Affairs (VA). In that decision, the RO denied a TDIU.

The Veteran had a Board videoconference hearing in March 2010 before the undersigned Acting Veterans Law Judge (AVLJ). That hearing addressed the issues of a TDIU and of the propriety of a reduction of the disability rating assigned for adenocarcinoma status post left lower lobectomy. A transcript of that hearing is associated with the claims file.

In June 2010 the Board found that the reduction of the rating was proper. The Board remanded the issue of the TDIU to the RO via the VA Appeals Management Center (AMC). The Board is satisfied that there has been substantial compliance with the remand directives. The Board will proceed with review. See Stegall v. West, 11 Vet. App. 268 (1998).

The Board has reviewed both the Veteran's paper claims file and the Veteran's file on the Virtual VA electronic file system, to ensure a total review of the evidence.



FINDINGS OF FACT

1. None of the Veteran's service-connected disabilities is rated at 40 percent or more, and the combined rating for those disabilities is less than 70 percent.

2. The Veteran's left knee arthroplasty, adenocarcinoma status post left lower lobectomy, hypertension, and tinnitus limit the Veteran's occupational capacity to sedentary employment but do not make him unable to secure or follow a substantially gainful occupation.


CONCLUSION OF LAW

The ratings and effects of the Veteran's service-connected disabilities do not warrant a TDIU either on a schedular or an extraschedular basis. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. §§ 3.321(b)(1), 4.16 (2013).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (codified at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, and 5126 (West 2002 & Supp. 2012)) redefined VA's duty to assist a claimant in the development of a claim for VA benefits. VA regulations for the implementation of the VCAA were codified as amended at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a) (2013).

The notice requirements of the VCAA require VA to notify the Veteran of what information or evidence is necessary to substantiate the claim; what subset of the necessary information or evidence, if any, the claimant is to provide; and what 

subset of the necessary information or evidence, if any, VA will attempt to obtain. 38 C.F.R. § 3.159(b). The United States Court of Appeals for Veterans Claims (Court) has stated that the requirements apply to all five elements of a service connection claim: veteran status, existence of a disability, a connection between the veteran's service and the disability, degree of disability, and effective date of the disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). VCAA notice must be provided to a claimant before the initial unfavorable decision on a claim for VA benefits by the agency of original jurisdiction (in this case, the RO). Id.; see also Pelegrini v. Principi, 18 Vet. App. 112 (2004). Insufficiency in the timing or content of VCAA notice is harmless, however, if the errors are not prejudicial to the claimant. Conway v. Principi, 353 F.3d 1369, 1374 (Fed. Cir. 2004) (VCAA notice errors are reviewed under a prejudicial error rule).

Also, in Bryant v. Shinseki, 23 Vet. App. 488, 493-94 (2010), the Court held that 38 C.F.R. § 3.103(c)(2) requires that that the VLJ who conducts a Board hearing fulfill duties to (1) fully explain the issues and (2) suggest the submission of evidence that may have been overlooked.

With respect to the Veteran's claim for a TDIU, the RO provided the Veteran with VCAA notice in a November 2006 letter, issued before the initial unfavorable decision on that claim. In that letter the RO addressed the information and evidence necessary to substantiate a claim for a TDIU. The RO informed the Veteran how VA assigns effective dates. The letter also addressed who was to provide the evidence.

In the March 2010 Board videoconference hearing the undersigned AVLJ fully explained the issues and suggested the submission of evidence that might have been overlooked. The Veteran has not asserted that VA failed to comply with 38 C.F.R. § 3.103(c)(2) or identified any prejudice in the conduct of the October 2011 Board hearing. The Board therefore finds that, consistent with Bryant, the AVLJ who conducted that hearing complied with the duties set forth in 38 C.F.R. § 3.103(c)(2), and that any error provided in notice during the Veteran's hearing constitutes harmless error.

The Veteran's claim file (including information on paper and in electronic form) contains service treatment records, records of post-service treatment and examinations, United States Social Security Administration (SSA) records, statements from the Veteran, and a transcript of the 2010 Board hearing. VA medical examinations and opinions have addressed the effects of the Veteran's service-connected disabilities on his capacity for employment. The record contains medical examination reports and opinions that are adequate to address the TDIU claim. In response to the June 2010 Board remand instructed that the TDIU issue be referred to the Director of the VA Compensation and Pension Service for a determination as to whether the Veteran is entitled to a TDIU on an extraschedular basis. In July 2011 the Director of the VA Compensation and Pension Service issued a determination as to whether the Veteran is entitled to a TDIU on an extraschedular basis. The Board is satisfied that there has been substantial compliance with the remand directives. Therefore no additional remand is needed, and the Board may proceed with review of the back disability service connection issue. See Stegall v. West, 11 Vet. App. 268 (1998).

The Board finds that the Veteran was notified and aware of the evidence needed to substantiate his TDIU claim, as well as the avenues through which he might obtain such evidence, and the allocation of responsibilities between the Veteran and VA in obtaining such evidence. The Veteran has actively participated in the claims process by providing evidence and argument. Thus, he was provided with a meaningful opportunity to participate in the claims process, and he has done so. Any error in the sequence of events or content of the notice is not shown to have affected the essential fairness of the adjudication nor to have caused injury to the Veteran's interests. See Pelegrini, 18 Vet. App. at 121. Therefore, any such error is harmless, and does not prohibit consideration of his TDIU claim on its merits. See Conway, 353 F.3d at 1374, Dingess, 19 Vet. App. 473; see also ATD Corp. v. Lydall, Inc., 159 F.3d 534, 549 (Fed. Cir. 1998).

TDIU

The Veteran is seeking a TDIU. He contends that his service-connected disabilities make him unable to work.

Disability ratings are determined by evaluating the extent to which a veteran's service-connected disability adversely affects his ability to function under the ordinary conditions of daily life, including employment, by comparing his symptomatology with the criteria set forth in the VA Schedule for Rating Disabilities (rating schedule). 38 U.S.C.A. § 1155; 38 C.F.R. Part 4, including §§ 4.1, 4.2, 4.10 (2013). VA regulations allow for the assignment of a total disability rating based on individual unemployability (TDIU) when a veteran is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, and the veteran has certain combinations of ratings for service-connected disabilities. If there is only one such disability, that disability must be ratable at 60 percent or more. If there are two or more disabilities, there must be at least one disability ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16(a).

Even if service-connected disabilities fail to meet the percentage standards set forth in 38 C.F.R. § 4.16(a), referral to the Director of the VA Compensation and Pension Service for extraschedular consideration of a TDIU is warranted if the veteran nonetheless is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities. 38 C.F.R. § 4.16(b).

When there is an exceptional disability picture, such that the rating schedule criteria do not reasonably describe a claimant's disability level and symptomatology, an RO may refer a case to the VA Under Secretary for Benefits or to the Director of the VA Compensation and Pension Service for consideration of an extraschedular rating. See 38 C.F.R. § 3.321(b)(1); see also Thun v. Peake, 22 Vet. App. 111, 115 (2008). Extraschedular ratings are limited to cases in which it is impractical to apply the regular standards of the rating schedule because there is an exceptional or unusual disability picture, with such related factors as frequent hospitalizations or marked interference with employment. 38 C.F.R. § 3.321(b)(1).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a claim, VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107.

The Veteran's disabilities for which service connection is established are left knee arthroplasty, which is rated as 30 percent disabling, adenocarcinoma status post left lung lower lobectomy, rated at 30 percent, hypertension rated at 10 percent, and tinnitus rated at 10 percent. The combined rating for his service-connected disabilities is 60 percent. The Veteran has sought service connection for a back disability, as incurred in service or as secondary to service-connected left knee disability. The RO denied service connection for a back disability. The Veteran appealed the RO's denial to the Board. In a decision issued separately from this decision, the Board denied service connection for a back disability. The Veteran's TDIU claim depends on whether he is unemployable as a result of the disabilities for which service connection is established, the left knee disability, lung disability, hypertension, and tinnitus.

As none of the Veteran's service-connected disabilities is rated at 40 percent or more and the combined rating is less than 70 percent, the ratings do not meet the criteria for a TDIU under 38 C.F.R. § 4.16(a). A TDIU can be assigned only if it is warranted on an extraschedular basis. The Board remanded the TDIU issue for extraschedular consideration., and the Director of the VA Compensation and Pension Service issued a determination that the Veteran is not entitled to a TDIU on an extraschedular basis. The Board will consider that determination as it considers all of the evidence relevant to the TDIU issue.

Medical history reports from the Veteran's Air National Guard service contain his statements that in the 1960s he worked in farming, as a lineman, and as a mechanic. He reported working as an aircraft mechanic and a technician in the 1970s and as an aircraft mechanics crew chief in the 1980s.

The Veteran was in a motor vehicle accident in 1969 and had left knee problems from then on. He underwent left knee surgery in 1973 and again several more times over the years. In his Air National Guard service in the 1980s he was on limited duty profiles due to his left knee disability. In a June 1986 evaluation, a service clinician noted that the Veteran was mildly hypertensive, and that with medication his blood pressure was under control. The clinician noted the concern of the Veteran's commander that the Veteran's left knee disability impaired his capacity for crew chief duties on the flight line, especially on icy surfaces. In December 1986 a private physician indicated that the Veteran's left knee would eventually need total replacement surgery. The physician stated that the left knee disability made the Veteran unable to run or jump, and necessitated care as to how far he walked. The physician stated that the Veteran could sit without difficulty.

A private medical record from November 1987 reflects the Veteran's report that he was retired from the military and was fairly inactive. In February 1989 the Veteran reported that he had worked as an aircraft mechanic and crew chief, and that he was retired from the civil service. The Veteran underwent left knee replacement surgery in March 1989. 

In a January 1988 Social Security disability determination, the SSA found that the Veteran had been disabled since July 1986 due to a primary diagnosis of marked degenerative arthritis of the left knee. An SSA official found that the medical evidence indicated that Veteran's respiratory disorder would not restrict him to sedentary work, and that his left knee condition would limit him to less than light physical work. The official found that the limitations of the Veteran's capacity, in combination with his age and his inability to return to his previous employment, made the Veteran eligible for SSA disability benefits.

In private medical treatment in 1992, the Veteran was noted to have right pleural thickening and a nodule in the lower lobe of his left lung. In 1994, he was found to have an adenocarcinoma in his left lung. He underwent left lung surgery with resection of the lesion and left lower lobectomy. The Veteran underwent surgical revision of his left knee prosthesis in the mid 1990s.

In November 1997, D. D. B., M.D., stated that the Veteran's left lung surgery residuals had "compromised his breathing to some degree." Dr. B. stated that knee replacements and chronic right shoulder strain also restricted the Veteran's physical capabilities. Dr. B. stated that the Veteran's disorders restricted him to sedentary work.

In a March 1999 examination T. E. L., M.D., found that the Veteran's respiratory condition would not impair him in most kinds of employment, and that his knee disability would preclude kneeling or repetitive bending and cause trouble with prolonged standing or walking.

In an April 1999 determination the SSA indicated that the Veteran had been disabled since July 1986. The determination showed a primary diagnosis of degenerative arthritis of the left knee and a secondary diagnosis of status post adenocarcinoma of the left lung.

The Veteran had additional left knee surgery in 2004. In March 2005 he wrote that because of his left knee disability he was medically discharged from the Air National Guard. He stated that this ended his military and civil service career as they were co-requirements.

On VA examination in May 2005 the Veteran reported that he was not employed. He stated that he had last worked, as a weekend security guard for a newspaper, in 2002. He related that at present his left knee disability limited the distance he could walk. He reported that he was on daily medication for hypertension. The examiner observed that the Veteran had a slightly antalgic gait. 

In 2005 the Veteran filed claims for service connection for lung disease. He attributed lung disease to asbestos exposure in his service work in aircraft repair or to Agent Orange exposure during service.

On VA examination in October 2005 the Veteran was described as retired. The examiner noted the history of the 1994 lung adenocarcinoma and surgery. The Veteran reported episodes of shortness of breath, treated with medication through an inhaler. He stated that he became short of breath with walking half a block or half a flight of stairs. The examiner found that the Veteran had clear breath sounds bilaterally and moved quickly and easily. Pulmonary function tests (PFTs) showed mild airway obstruction and mild chest restriction.

The claims file contains records of VA treatment of the Veteran for hypertension in 2005 and 2006. In June 2006 the Veteran filed a claim for a TDIU. He stated that his left knee disability had made him unable to perform his military duties.

On VA examination in December 2006 the Veteran indicated that he was retired, and that he had last worked several years earlier, as a weekend security guard at a newspaper. He reported using daily medication for his respiratory disorder. He stated that he became short of breath with walking or climbing stairs, and that he could breathe fine when sitting. He indicated that he paid others to do house and yard tasks. He reported that he continued on daily blood pressure medication. He stated that his left knee prosthesis had diminished flexion and required caution when using stairs. He stated that his breathing limitations limited his movement before his left knee limitations did.

The examiner observed that the Veteran had a normal gait. The Veteran's breath sounds were fair, with some coarseness, but no rales, wheezing, or rhonchi. The left knee had motion from 0 to 118 degrees, with crepitus but no evidence of pain on motion. PFTs showed mild airway obstruction and mild chest restriction. The examiner indicated that the Veteran's activities and capacity for employment were limited because of his current service-connected problems. He stated:

The veteran should not be involved in activities that require prolonged standing or walking or kneeling or bending involving the left knee because of his total knee prosthesis. He also should not be involved in activities that require any degree of standing or walking or lifting or carrying activities because of his respiratory system. He remains capable of sedentary employment if the above limitations can be observed.

In March 2007 private physician M. E. M., M.D., wrote that he saw the Veteran for dyspnea on any exertion. He indicated that the Veteran reported that his stamina was very much diminished and he had very limited reserves. Dr. M. found that repeat PFTs showed severe obstructive ventilatory impairment with no reversibility with bronchodilators. Dr. M. expressed the belief that the Veteran had emphysema and chronic obstructive bronchitis.

On VA examination in June 2007 the Veteran reported that, beginning in late 2006, he experienced increased shortness of breath with exertion. He stated that over several months his breathing then improved back to his baseline. He indicated that he continued on daily medications for his respiratory disorder. He reported shortness of breath with about a half a block of walking and a half a flight of stairs. He related occasional shortness of breath at night. He stated that he did not have shortness of breath with sitting. He reported that because of his respiratory limitations he paid others to do house cleaning and yard work. PFTs showed mildly reduced diffusing capacity, described as explained by the reduced lung volume. The PFTs also showed mildly reduced vital capacity and evidence of air trapping. The examiner noted that in addition to the left lung surgery for adenocarcinoma the Veteran had emphysema and chronic obstructive bronchitis.

In an August 2007 appeal the Veteran asserted that his lung condition kept him from obtaining employment.

In private treatment in December 2007 with Dr. M. the Veteran reported ongoing exertional dyspnea. Dr. M. stated that recent PFTs showed moderately severe airflow obstruction. Dr. M. found that the Veteran had moderately severe chronic obstructive pulmonary disease (COPD).

On VA audiology examination in March 2009 the Veteran reported that he had constant tinnitus that was annoying and that interfered with communication.

In July 2009 the Veteran received medical treatment after he fell and sustained a thoracic spine injury. Treatment included thoracic spine surgery and physical therapy.

In the March 2010 Board videoconference hearing the Veteran reported that he had last worked full time in 1986. He stated that he had stopped working because of his left knee disability. He indicated that his respiratory impairment made him get out of breath with physical activity. He reported that as a result he hired others to handle household and yard tasks. He asserted that his breathing limitations made him unable to work. He stated that his legs were weak.

Private treatment records from December 2010 reflect that the Veteran received physical therapy to address weakness in his lower extremities. In February 2011 the Veteran underwent cervical spine surgery.

In July 2011 the Director of the VA Compensation and Pension Service addressed whether the Veteran is entitled to a TDIU on an extraschedular basis. The Director reported having reviewed the Veteran's claims file. The Director discussed the Social Security disability determination and the report of the December 2006 VA examination. The Director concluded that the evidence shows that, "The Veteran is capable of performing sedentary employment as long as it does not involve prolonged walking, standing, bending, carrying, or kneeling." The Director denied entitlement to a TDIU on an extraschedular basis.

The Veteran sustained a right hip fracture in 2011, and underwent right hip replacement surgery January 2012. In April 2012 it was noted that the Veteran ambulated with a walker, and would receive weekly home health aide assistance. Diagnoses included COPD, hypertension, back pain, and history of right hip fracture.

The evidence shows that the Veteran's service-connected disabilities limit the types of employment he can hold. The preponderance of the evidence indicates, however, that the combined effects of his disabilities do not make him unable to secure or follow a substantially gainful occupation. The condition of his left knee status post replacement and other surgeries makes him unable to handle work that requires considerable weightbearing. His respiratory limitations make him unable to handle work that requires considerable physical exertion. Clinicians have concluded, however, that his knee and lung disabilities do not preclude sedentary work that is not physically demanding. His hypertension requires that he take medication, but there is no indication that it would impede sedentary employment. His tinnitus reportedly interferes with communication, but there is no indication that it interferes with communication to an extent that would significantly interfere with work.

While the SSA found that the Veteran's knee and lung disabilities make him disabled, that decision was also based on SSA criteria that consider age and ability to continue in previously held employment. The SSA determination is not designed to address the VA TDIU standard, inability to secure or follow a substantially gainful occupation. Clinicians who have considered the Veteran's disabilities have concluded that despite his left knee disability, lung disability, hypertension, and tinnitus he retains the ability to hold employment if it is sedentary. The Veteran has not held full time employment since 1986, and he is unable to manage jobs that have significant physical demands. His work capacity is limited to sedentary work, but that limitation does not constitute inability to secure or follow a substantially gainful occupation. His Air National Guard work included work as a crew chief, so he has history of some work that does not depend on physical exertion or prolonged weightbearing. The Director of the VA Compensation and Pension Service determined that a TDIU on an extraschedular basis is not warranted in this case. As the preponderance of the evidence indicates that the Veteran's service-connected disabilities do not make him unable to secure or follow a substantially gainful occupation, the Board also finds that a TDIU is not warranted.



 (CONTINUED ON NEXT PAGE)


ORDER

Entitlement to a total disability rating based on individual unemployability is denied.




____________________________________________
Thomas H. O'Shay
Acting Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs